DIXIE CAB COMPANY *v.* BLACK & WHITE CAB COMPANY.

4-8725                                                     217 S. W. 2d 602

Opinion delivered February 7, 1949.

Rehearing denied March 7, 1949.

*Heartsill Ragon, Lyman L. Mikel* and *Grant & Rose,* for appellant.

*Hugh M. Bland* and *Hardin, Barton & Shaw,* for appellee.

MINOR W. MILLWEE, Justice. The Dixie Cab Co. was incorporated in 1938 for the purpose of furnishing taxi service primarily to the colored inhabitants of the City of Fort Smith, Arkansas. On August 22, 1945, Elmer Brown, who owned one-half interest in the corporation, entered into a conditional sales contract for the purchase of the other half interest from the owners, William Jones and wife, Ora Jones, for a stipulated consideration of $2,250, $1,600 of which was paid in cash with the balance of $650 payable $50 monthly. Brown made the monthly payments for several months, but became further indebted to Jones on other transactions connected with the operation of the business.

On February 1, 1947, Brown and Jones entered into an agreement whereby Jones purported to lease the "business" to Brown for one year on a daily rental fee basis. Brown became ill in the summer of 1947 and Jones took over operation of the business. In August, 1947, R. A. Staton, president of the Black & White Cab Co., began negotiations with Brown for purchase of the assets of the Dixie Company which consisted of a franchise to operate and a telephone number. On August 12, 1947, the Dixie Cab Co., through Brown, as president, and his wife, as secretary, leased the assets of the corporation to Black & White Cab Co. for one year at a stipulated rental of $10 per month with option to purchase said assets for $500 at any time within the 12-month period.

On November 5, 1947, Dixie Cab Co. and Brown and wife instituted suit No. 3246 against Jones and wife alleging ownership in the Browns of all the stock of the Dixie Cab Co. under the sales contract of August 22, 1945, and that they were indebted to Jones in an undetermined

amount under the contract. The complaint prayed for an accounting between the parties and the appointment of a master to render a stated account. The master appointed by the court filed his report on December 2, 1947, showing an indebtedness of Brown to Jones in the amount of $538.43.

On petition of the plaintiffs, Brown and wife, and by subsequent agreement of counsel for both sides, R. A. Staton was appointed receiver on January 2, 1948 and took charge of and operated the Dixie Cab Co. until succeeded by Dee Kirkendall on May 1, 1948.

On January 12, 1948, Brown and wife and Jones and wife executed separate bills of sale transferring to Ralph Mizell and A. E. Walton all their title and interest in the Dixie Cab Co. On the same date Brown refused the tender of the $10 monthly rental by Black & White under the lease and option to purchase agreement of August 12, 1947. The escrow agent with whom Mizell and Walton had deposited $3,000 with which to secure the Dixie franchise, paid Brown $1,000 and Jones $600 for the bills of sale.

On January 15, 1948, Black & White Cab Co. filed suit No. 3330 against the Dixie Cab Co., Elmer Brown and wife, William Jones and wife, Daisy West, Ralph Mizell, A. E. Walton and D. L. Grace. The complaint alleged that the defendants, Brown and Jones, had attempted to dispose of the assets of the Dixie Cab Co. to Mizell and Walton in violation of the rights of plaintiff under the lease and option to purchase contract of August 12, 1947, which was alleged to be in full force and effect; and that any claim or interest. in the Dixie Cab Co. by the defendants was void and inferior to the rights of the plaintiff. The prayer of the complaint was that defendants be restrained from disposing of the assets of the corporation. An amendment to the complaint was subsequently filed in which plaintiff asserted its election to exercise its option to purchase the assets of the Dixie Cab Co. and deposited in court the option purchase price of $500. It was further prayed that the court direct specific performance of the option agreement.

On January 29, 1948, Jones and wife filed an answer and cross complaint in the first suit alleging that Brown defaulted in his payments under the contract of August 22, 1945, and that he violated said contract by execution of the lease and option to purchase agreement to Black & White Cab Co.; that Jones and wife exercised their rights under the forfeiture clause contained in the conditional sales contract; and that since the appointment of said receiver, Brown and Jones had settled their difficulties between themselves and that nothing could be gained by further litigation. It was prayed that the suit be dismissed and the receiver discharged after being required to make proper accounting.

The answer of defendants in the second suit contained a general denial and alleged that the lease and option to purchase agreement between the Dixie Cab Co. and Black & White Cab Co. was void and that its terms were not complied with by the lessee. It was further alleged that the first suit was brought by Brown against Jones to settle a disagreement between the parties "in the adjustment of their accounts." Defendants also asserted the validity of the sale to Mizell and Walton.

The two cases were consolidated for trial which resulted in rendition of a decree on April 13, 1948. The court found the lease and option to purchase contract of August 12, 1947, in full force and effect and that the Black & White Cab Co. was the owner of the assets of the Dixie Cab Co. by exercise of its option to purchase; and that any rights of Mizell and Walton under the bills of sale from Brown and Jones were subordinate to those of the Black & White Cab Co. The court further directed that the $500 purchase price paid into court by Black & White Cab Co. be distributed as follows: $300 to Elmer Brown as owner of 30 shares of Dixie Cab Co. stock, and $200 to Cora Brown as owner of 20 shares of said stock.

On May 17, 1948, William Jones filed a verified motion to vacate the decree on the ground of fraud practiced by the successful party in the procurance thereof. It was also alleged that Jones was prevented by an

unavoidable casualty from appearing at the trial because "he was bedfast with paralysis" at the time and that his presence was forbidden by his physician. At a hearing on this motion and exceptions filed to the report of the receiver, R. A. Staton, the court overruled the motion to vacate and dismissed the exceptions as having been abandoned, but found the receiver, Staton, guilty of contempt of court and assessed a fine of $10 against him. Other motions were filed during the course of the litigation which have since been abandoned and have no bearing on the merits of the controversy. All defendants have appealed.

Appellants first insist that under the conditional sales contract between Brown and Jones of August 22, 1945, the latter retained title to one-half interest in the Dixie Cab Co. until the purchase price was paid and had the right to, and did, cancel the sale and thereby re-establish his ownership of 50 per cent of the stock of the Dixie Cab Co. It is argued that Brown and wife were, therefore, unable to transfer the assets of Dixie to Black & White by execution of the lease and option to purchase contract on behalf of Dixie Cab Co. on August 12, 1947.

The applicable rule is stated in *Laird* v. *Byrd*, 177 Ark. 1114, 9 S. W. 2d 571, as follows: "It is well settled in this State that one who sells personal property with reservation of title, upon the purchaser's default may either treat the sale as canceled and bring an action of replevin, or treat the sale as absolute and sue for the purchase money. It is equally well settled that the purchaser has the right to pay the balance of the purchase price, so as to prevent the seller from retaking the property. *Culberson* v. *Lakella Iron Works*, 170 Ark. 813, 281 S. W. 373."

If Jones elected to treat the sale as absolute and demand the balance of the purchase price and advances, he became Brown's creditor and did not re-establish his status as a stockholder in the Dixie Cab Co. If, on the contrary, he elected to cancel the sale and assert title which he retained under the contract, his status as stock-

holder was retained. Appellants point to the execution of the lease contract between Jones and Brown on February 1, 1947, as conclusive evidence that Jones elected to treat the sale as cancelled and thereby retained his status as stockholder in the Dixie Cab Co. While this transaction supports their contention, there was also evidence of subsequent acts on the part of Jones showing that he treated the sale to Brown as absolute and occupied the status of creditor.

Both Staton and Brown testified that prior to the execution of the lease and option to purchase contract they had a conference with Jones who stated that Brown was sole owner of the cab company and owed Jones about $500. There was also evidence that, after executing the agreement of February 1, 1947, Brown became ill and Jones resumed operation of the company for the purpose of collecting Brown's indebtedness. The testimony of Jones's wife corroborated that of Staton and Brown on both points. She also testified that Mizell and Walton paid Jones $600, which represented the indebtedness of Brown to Jones.

In the accounting suit by Brown against Jones, the master stated an account between the parties after several conferences with both and the amount of Brown's indebtedness was agreed upon. The master, who appears to be disinterested, testified that the account was reduced to writing and attested to by Jones as being correct on November 29, 1947.

The trial court treated the actions of Jones as an election on his part to treat the sale as absolute and demand the balance of the purchase price and advances made by him and as a waiver of his right to assert title to one-half interest in the company. We think the preponderance of the testimony supports the trial court's conclusion that the relation of creditor and debtor existed between Jones and Brown.

It is next contended that the lease and option to purchase contract of August 12, 1947, is void because its execution was authorized at a meeting of stockholders held without written notice to absent stockholders as re-

quired by §§ 2186 and 2196 of Pope's Digest. This contention is predicated on the theory that Jones was a stockholder at the time of the stockholders' meeting on August 12, 1947. The Dixie Cab Co. apparently kept no records bearing on its corporate structure. The only record evidence of stock ownership was a memorandum furnished by Brown to R. A. Staton prior to execution of the contract showing that, of the 50 shares of corporate stock, Brown owned 30 shares; his wife, 10 shares; and Daisy West, 10 shares. The preponderance of the evidence supports the chancellor's finding that all the stock was owned by Brown and wife who were president and secretary, respectively, of the corporation and that Daisy West owned no stock and did not execute a proxy purportedly used at the stockholders' meeting. It is undisputed that the proper corporate procedure was followed to authorize making of the contract of August 12, 1947, if the stockholders' meeting was properly held.

Section 2187 of Pope's Digest provides that, "when the stockholders who hold four-fifths of the stock entitled to vote at such meeting shall be present at a meeting, however called or notified, and shall sign a written consent thereto on the record of the meeting, the acts of such meeting shall be as valid as if legally called and notified." Section 2196, *supra,* authorizes officers of a corporation to dispose of corporate assets when directed to do so by resolution of the board of directors theretofore authorized by vote of stockholders given at a stockholders' meeting after notice as required in § 2186, *supra,* "or when authorized by the written consent of stockholders of record holding stock in the corporation entitling them to exercise at least a majority of the voting power on such proposal; . . ." Under either of these sections it is immaterial whether Brown and wife owned all, or only four-fifths, of the corporate stock at the time of the stockholders' meeting of August 12, 1947. Since we conclude that the chancellor correctly held Brown and wife to be the owners of the entire stock of the corporation, it follows that a valid meeting was held on August 12, 1947, and they, as president and secretary, respectively, were duly and legally authorized to execute the

lease and option to purchase contract with Black & White Cab Co.

Appellants next say there was no valid consideration from Black & White Cab Co. to Dixie Cab Co. for the lease and option to purchase contract. It is argued that the monthly rentals of $10 as provided in the agreement were not paid and that the contract was not, therefore, in effect at the time Black & White Cab Co. elected to exercise its option to purchase. The testimony shows that Dixie Cab Co. owed $25.35 for franchise tax and a telephone bill on August 12, 1947; that Brown executed a note for this amount to Black & White Cab Co. which was to be repaid by credits of the monthly rentals provided for under the lease. These credits were made. According to the testimony of the secretary of Black & White Cab Co., he advanced $25 to Dixie Cab Co. to apply on the fee of the attorney for Dixie Cab Co. and Brown and wife in the accounting suit. This payment was made

to the attorney at Brown's request. Although Brown denied that he authorized the payment, we think the preponderance of the evidence supports the court's finding that he did so with the understanding that it would be credited on the monthly rentals. The credits of $50.35 brought the payments under the lease contract up to January 12, 1947, when Brown, as president of Dixie Cab Co., refused to accept the payment then due.

It is finally insisted that the chancellor erred in overruling the motion to vacate the decree filed by defendant, Jones. It is argued that Jones was mentally incompetent to attend the trial in March, 1948, and that the court failed in its duty to safeguard said defendant's rights by appointment of a guardian under § 1330 of Pope's Digest. The motion to vacate did not allege the mental incapacity of Jones although his physician did give it as his opinion that he was neither physically nor mentally competent to appear at the trial. Counsel for Jones appeared in all the proceedings below along with Jones's wife who testified that her husband was ''up and about'' at the time of the trial. There was no suggestion of his mental incompetence at the trial and no application for

continuance was asked by his counsel on account of his condition. It is certain from the evidence that if Jones was ever mentally incapacitated, this condition existed on January 12, 1948, when he executed the bill of sale to Mizell and Walton, but his counsel earnestly contend that this was a valid and binding instrument. Moreover, it is evident from the pleadings and testimony that Jones had been fully paid for his interest in the Dixie Cab Co. and that he disclaimed any further interest in the suits.

The decree is supported by the preponderance of the evidence and is in all things affirmed.