HANSEN, Circuit Judge,
dissenting.
I respectfully dissent.
First, the court errs factually when it speaks of the “royalty owners’ take-or-pay claims”. Supra, at 782, 783. The only “take- or-pay claims” that existed in this case were *790 those held by Arkoma against Arkla arising out of Arkla’s refusal to either take or pay pursuant to one or more of eight gas purchase contracts (the most notable of which is GPC 5239) between the two corporations. The take-or-pay claims against Arkla were always contract rights and nothing more. The take-or-pay claim in GPC 5239 was not held by the plaintiffs, and most certainly not by Jones and McCoy as individuals, but solely by the plaintiffs’ lessee, Arkoma. It was always a corporate asset of Arkoma’s, a receivable, if you will, of disputed and doubtful value heavily laden with litigation risks. In the first appeal we held that the plaintiff royalty owners were not even third party beneficiaries of GPC 5239, holding them to be “at the most, incidental beneficiaries.” Klein v. Jones, 980 F.2d 521, 527 (8th Cir.1992) (Klein I). Their claims, if any, must be bottomed on their leases with Arkoma, and as I understand it, their unjust enrichment claims in this lawsuit are that Jones and McCoy failed to share with them some of the monies Jones and McCoy received when Jones and McCoy sold their individual interests in Arkoma to Arkla’s wholly-owned subsidiary, Arkla Exploration Company. Or as the plaintiffs’ counsel put it at oral argument, “They got theirs — we didn’t get ours.”[1]
Second, I most respectfully disagree with our court’s first and basic premise that this court concluded as a matter of law in the first appeal that an identifiable and discrete part of the money Jones and McCoy received from the sale of Arkoma represented a “settlement” of the take-or-pay dispute between Arkla and Arkoma. If it was anything, our prior comment that “[t]he difference in the fair market value of the reserves and the amount paid to Jones and McCoy represented the value paid to Jones and McCoy to settle Arkla’s take or pay dispute under GPC 5239,” id. at 525, was an unnecessary and exceptionally inappropriate appellate court fact-finding, and we should candidly recognize it as such. It must be remembered that this case first came to us on a grant of summary judgment by the district court (Morris S. Arnold, J.) purely on a question of law. Whether the take-or-pay claim held by Arkoma against Arkla had in fact been settled by any of the payments made to Jones and McCoy was hotly contested in the summary judgment papers filed with the trial court. The district judge acknowledged the disputes of fact about the “settlement” of the take-or-pay claim that existed at the time of the submission of the summary judgment motion:
The briefs are full of a lot of argument about whether or when this take or pay contract was settled, whether it was settled when Arkoma was sold and Mr. Jones and Mr. McCoy got money for their stock and some other things, or whether it was settled when in fact Arkoma entered into a new agreement with the Arkla companies.
(JM App. at 2-3.) Having recognized the genuine factual disputes before him about “whether or when this take or pay contract was settled,” the district judge went on to say:
But I don’t think it matters, at least not on this level, when or if the contract was settled, because I don’t think the plaintiffs have a right to any portion of the proceeds of a settlement of a take or pay obligation.
(Id. at 3.)[2] It was on that issue of law that we reversed the district court’s grant of sum *791 mary judgment to Jones and McCoy and adopted the “Harrell Rule.” For our court to say today that “[o]ur legal conclusion that the transaction was a settlement was based upon the undisputed context of the negotiations leading up to the agreement ... ”, supra, at 785 (emphasis added), is directly contrary to the record before the district court at the time it granted summary judgment and cannot be correct. Like the district court, it was not necessary “on this level” for this court to decide in Klein I “whether or when this take or pay contract was settled” (let alone what was paid to settle it, which is also what the court now says the first opinion did and what it is now trying to enforce). All we had to decide in Klein I was whether royalty owners had a legal entitlement to share in the settlement of a take or pay contract and leave to the district court on remand to determine the factual issues of what, when, whether, and how settlement occurred.
We consistently reverse district judges who decide disputed issues of fact in determining summary judgment motions. See Teleconnect v. Ensrud, 55 F.3d 357, 360 (8th Cir.1995) (“The summary judgment mechanism is not designed to forecast the work of the finder of fact.”); Oldham v. West, 47 F.3d 985, 989 (8th Cir.1995). We should be willing to take the same medicine we dose out and recognize our own errors when we make them. We are not allowed on appeal to weigh the evidence and resolve disputed questions of fact. McCurry v. Tesch, 824 F.2d 638, 640 (8th Cir.1987) (“The trial court is the place for the facts to be found. Appellate courts should not find the facts_”). Rather, on appeal from a grant of summary judgment as in Klein I, we are only authorized to view the evidence in the light most favorable to the nonmovant (not to determine what disputed facts that evidence proves) and then to decide whether the movant has “established its right to a judgment with such clarity as to leave no room for contro-versy_” Kegel v. Runnels, 793 F.2d 924, 927 (8th Cir.1986). Under applicable Arkansas law, whether or not a settlement was made is an issue of fact for the trier of fact. Rowland v. Worthen Bank & Trust Co., N.A., 13 Ark.App. 139, 680 S.W.2d 726, 728 (1984) (“The Court of Appeals cannot act as a factfinder. We must therefore reverse and remand this matter to the trial court so that a further hearing may be held to determine whether a settlement had been made....” (citation omitted)).[3] We committed fundamental error in Klein I when we included in the “FACTS” portion of the opinion the resolution of what everyone in the district court knew were hotly disputed fact issues— “whether or when this take or pay contract was settled.” Because Jones and McCoy had no opportunity in the summary judgment setting to obtain a ruling from the district judge on the disputed issues of fact before the first appeal, they were not and should not be bound on remand by our court’s statements on the factual issues. See International Union, UAW v. Mack Trucks, Inc., 917 F.2d 107, 110-11 (3d Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).
Nor are we now correct, and in truth we compound our error, when we take what was an unwarranted appellate court fact-finding, call it a “conclusion of law,” and then use it as “the law of the ease” to reverse carefully considered detailed findings of fact made by the district judge after hearing all of the evidence in a five-day trial. Our gratuitous finding (or “assumption” as the district judge more politely characterized it on remand) was not only unwarranted, ill-advised, and *792 inappropriate, it was, as the district judge’s meticulous fact-findings on remand demonstrate, clearly wrong.
We can still correct rather than compound our previous error by now treating our prior finding not as either established fact or as the law of the case, but as what it should have been — a recitation of the evidence as viewed in the light most favorable to the nonmoving plaintiffs at the time the trial court granted summary judgment against them. Then we are free to do that which the law requires us to do now — review the findings of fact made by the district court on remand for clear error. Having done so, I would affirm the district court on the unjust enrichment claims made by the plaintiffs against Jones and McCoy.
I also dissent from the court’s opinion with respect to the implied covenant-to-market claim made against the Arkla defendants. The court pegs its conclusion of liability on a determination that “Arkoma failed to retain and pay over to the royalty owners a proportionate share of the premium paid by Arkla to settle the take-or-pay claims.” Supra, at 788. The “premium” the court is talking about is the “premium” the court erroneously finds Jones and McCoy were paid as individuals to settle the take-or-pay dispute pursuant to the terms of the December 31, 1986, transactions. Swpra, at 786-87. Because I disagree with the court’s basic conclusion that Jones and McCoy were paid anything as individuals to settle the take-or-pay dispute between the two corporations, but instead were paid only for the value of Arkoma itself, which included whatever present contingent asset value the take-or-pay dispute with Ark-la may have had to Arkoma, I cannot concur with the court’s conclusion about Arkoma’s responsibility to retain some of the monies paid by Arkla for the plaintiffs’ benefit. In addition, any monies paid by Arkla went directly to Jones and McCoy without passing through Arkoma. There was nothing for Arkoma to “retain.” In my view, the implied covenant-to-market claim only reaches the actions of New Arkoma in renegotiating its contract rights in GPC 5239. (The reader must remember that the plaintiffs had no legally enforceable rights in the contract and were only incidental beneficiaries thereof.) With respect to that issue, I agree with the district court that there was no violation of any such implied covenant. The actions taken by New Arkoma in negotiating an end to the stalemate were similar to those taken by many other producers with, disputed take-or-pay contracts, and resulted in the movement of the plaintiffs’ gas out of the ground at better than existing market prices with royalties being paid.[4] Its actions in renegotiating GPC 5239 meet the test we set out in Klein I — “The test of compliance with an implied covenant is that of a reasonable developer.” Klein I, 980 F.2d at 532. In fact, given the market conditions then existing, it probably would have been imprudent not to have renegotiated the contract. See Frey v. Amoco Prod. Co., 603 So.2d 166, 176 (La.1992) (While making a long term contract containing a take-or-pay provision with pipeline company was originally prudent, producer “would also likely be deemed to have acted imprudently” if it failed to renegotiate in face of pipeline’s financial inability to fully perform take or pay given market conditions.). Although the following quotation may be subject to the criticisms made herein, this court said as much in Klein I:
In this case the take-or-pay elements in the developers [sic] contracts with the pipeline/marketer were, because of Federal Energy Regulatory Commission intervention, literally bankrupting the pipeline, and those facts must be considered in evaluating the reasonableness of defendants’ actions. We find it reasonable for the defendants to make some effort to liquidate the take-or-pay obligations of AEC.
*793 Klein I, 980 F.2d at 526. Plaintiffs have failed to show that the district court’s fact-findings on this claim are clearly erroneous; the evidence fully supports the trial court’s determination that no violation of the implied covenant to market gas in a reasonable and prudent manner occurred, and I would affirm its judgment in all respects.
Accordingly, I respectfully dissent.

. Contrary to the criticism made by my brothers, supra, at 788, 789, in my view the royalty owners are entitled to everything their leases entitle them by applying the “Harrell Rule” to let them share in the settlement of the take or pay contracts. As outlined herein, my dispute is with the court’s adamant insistence that the first appeal decided as a matter of law that the take or pay contracts were settled by payments to Jones and McCoy and the terms of such a settlement.

. The court’s majority misreads this dissent. Supra, at 789. As stated above, the genuine factual disputes recognized by the first district judge were "whether or when this take or pay contract was settled.” The only metamorphosis which occurs is when the majority takes those recognized and existing factual disputes as to "whether and upon what terms a settlement was reached,” supra, at 789, and now says they were really questions of law decided by the first appeal. The real question of law involved in the first appeal was whether the first district judge was right when he said that royalty owners had no right to any portion of the proceeds of a settlement of a take or pay contract. We said that the district court was wrong, and that royalty owners, under the "Harrell Rule,” have a right to share in the settlement of a take or pay contract between their lessee and a pipeline company. I do not disagree with that legal conclusion.

. Contrary to the majority's criticism, supra, at 788-89, Rowland is directly on point. In Rowland, as it was in this case with respect to the first appeal, only a question of law was before the appellate court. It was precisely because the Arkansas trial court had made no findings of fact about "whether, under the facts of this case, a settlement in fact had been made ...” (680 S.W.2d at 728) (emphasis added) that the Arkansas appellate court remanded to determine if a settlement had in fact been made. At the risk of repetition, then District Judge Arnold, just like the state trial judge in Rowland, made no fact-finding about "when or if the contract was settled" (JM App. at 3), because, just like the state trial judge in Rowland, he decided the case on a question of law. The difference between our court and the Arkansas Court of Appeals is that the state appellate court correctly declined the opportunity to look at the facts in the record as they existed before the trial court and make the factual determinations that a settlement had, in fact, been made (and also its terms) as our court erroneously does.

. The majority again errs in its reading of this dissent. Under the district court's judgment, which should be affirmed, the royalty owners received the benefit of the above market prices contained in the renegotiated take or pay contract which reopened their wells. For the first time since the take or pay dispute arose, they began receiving real dollars, not "zero dollars.” They were receiving zero dollars, i.e., nothing, all the while the unresolved take or pay contract dispute between Arkoma and Arkla caused their gas to remain shut in and no production occurred.