Alfred J. HOLLAND v. Frances WALLS and
WALLS ABSTRACTER, INC.

CA 81-83                                    621 S.W. 2d 496

Court of Appeals of Arkansas
Opinion delivered September 30, 1981

*Alfred J. Holland* and *H. David Blair*, for appellant.

*Branch & Thompson*, for appellees.

DONALD L. CORBIN, Judge. On March 18, 1975, the appellant and appellee entered into a written executory contract by which the appellant agreed to buy and the appellee agreed to sell an existing abstract business known as the Paragould Abstract Company in Greene County, Arkansas. By the terms of the agreement, the appellant was to receive the assets of the business except the accounts receivable, cash on hand or money on deposit as of the close of business on May 16, 1976. The appellant was to pay the appellee the purchase price over a prescribed schedule set forth in the contract.

Prior to the consummation of the contract of sale by delivery of the business and abstract books to the appellant, the appellee had microfilm copies made of part of the tract books.

The contract provided that appellant would employ

appellee for two years after the sale of the business. The agreement also provided that appellee would not compete with appellant for three years from the date of May 16, 1976. The appellee terminated her employment with appellant in February, 1979. In March of 1979, she started working on abstract books with the intention of forming another abstract business. Around this time, two employees of the appellant terminated their employment and went to work for the appellee. In June of 1979, appellee's title plant was licensed and she went into direct competition with appellant.

The prints of the microfilm copies of a portion of the tract books were used along with new tract books made by the appellee and her employees to obtain a license for a title plant. The appellee did not advise appellant that a duplicate set of tract books had been made nor did the appellant otherwise acquire this knowledge until later.

Appellant commenced this action seeking injunctive relief against the appellee's use of the tract books reproduced from appellant's books and an accounting of benefits gained by use of the tract books. The trial court denied all relief and from that judgment comes this appeal. We reverse.

In matters of equity the Court is one of conscience which should be ever diligent to grant relief against inequitable conduct, however ingenious or unique the form may be. *Whitaker & Co.* v. *Sewer Improvement District No. 1,* 229 Ark. 697, 704, 318 S.W. 2d 831 (1958).

The sales agreement dated March 18, 1975, between the parties stated in part:

>    (1)   The Seller agrees to sell and the Buyer agrees to buy on May 16, 1976, the Seller's business known as Paragould Abstract Company, which consists of the inventory, supplies and equipment used in and making up Paragould Abstract Company, including, but not limited to, the following:
>    8 property tract books currently posted to date of sale; all exposed microfilm which shall include filmed

copies of all record books which are currently being copied by the Seller, which copies shall include all such books which are completed and filed through July, 1975; The Seller shall not be obligated to microfilm any such books which are only partially filled as of July 31, 1975; inventory of abstracts and plats . . . .

The appellee, Frances Walls, stated upon direct examination:

He did buy the entire Paragould Abstract Company and got everything I had at that time, everything that was listed on the contract and more. . . . I did sell him the business.

These tract books, about which this litigation centers, are indices of deeds and mortgages affecting title to land within Greene County, Arkansas, which indices are arranged by legal descriptions of the property. Thus, by use of these books a list of citations to the books of record, wherein all transactions affecting a given parcel may be located, can be readily compiled. From this, an abstract of title may be quickly prepared. These tract books are both a practical and legal necessity for engaging in the business of abstracting the title to land. They are a practical necessity because the time which would be required to trace the chain of title to a particular tract of land is expedited by use of indices maintained by the recorder. On this point appellee testified:

Q. That's the value of having these books made in that form, is that it lists all transactions by legal description. And you save tremendous amount of time in checking out title, doesn't it.

A. Yes.

We believe the contract between the parties included the duplicates of the tract books. The appellee breached the contract when she failed to turn over the duplicates to appellant. The terms of the contract included the language "including, but not limited to," and listed certain specific items.

We find that the duplicates were tangible property rights. It would be foolish for us to believe that the appellant paid $60,000 for the right to compete with appellee. The duplicates were part and parcel of the sales agreement and should have been relinquished by the appellee at the time she turned the business over to the appellant.

Additionally, appellee converted the duplicates (which we find to be the property of appellant) when she exercised dominion over the property in violation of appellant's right to possession. Whether the conversion was actual or constructive, there was nevertheless a conversion. See *Plunkett-Jarrell Grocery Co.* v. *Terry,* 222 Ark. 784, 263 S.W. 2d 229 (1953).

These abstracts were not made for publication in the general sense. Publication as such would defeat the reason for their production. Their value derives chiefly from the time and expense incurred in their production; and very importantly, in their contents being concealed from the public. In the commercial sense, they are the tools of the trade.

We agree with *Leon Loan and Abstract Co.* v. *Equalization Bd.,* 86 Iowa 127, 53 N.W. 94, which involved a determination of whether the abstracts and records of titles owned by the Leon Loan and Abstract Co. were subject to taxation. The Court stated therein:

> [T]hese books are tangible, have a particular location, and are capable of seizure and delivery. They are more like the engraved plates referred to in cited cases. It would, to our minds, be a strange perversion of the law to hold that these books, that are transferrable from hand to hand, of the value of $6,000, and usable by any person of ordinary intelligence and ability, as a means of profit, should be exempt from taxation, merely because their contents are written, and not printed, when, in either case, their use would be the same; or because "they are only valuable for the information they contain, and that information is conveyed by consultation or extracts," .... It may be said that the value of

books in general depends on the information they contain, and that such information is derived from consultation; but for such abstract reasons they are no less property, subject to the operation of the revenue laws of the state.

In *Washington Bank of Walla Walla* v. *Fidelity Abstract & Security Co.*, 15 Wash. 487, 46 P. 1036 (1896), the Supreme Court of Washington held that a set of abstract books is corporeal, tangible property and the subject of levy and sale under execution. The abstract company applied for a loan of $2,000 and offered as security a chattel mortgage on a set of abstract records and indices of lands in Walla Walla County, Washington. Appellant abstract company went in default under the loan and respondent brought suit to foreclose the mortgage. The Washington Court stated:

By his own contract, he treated these abstract books as property of value, and obtained a valuable consideration for them in the nature of a loan, and it would be unconscionable to allow him to plead their worthlessness in a court of equity.

In *Washington Bank of Walla Walla* v. *Fidelity Abstract, supra,* the appellant relied on the case of *Dart* v. *Woodhouse,* 40 Mich. 399. The *Dart* case held that:

[A] set of abstract books such as those in suit is but the unpublished manuscript of an author, valuable only on account of its literary contents, and belongs to the class of unleviable property, such as a patent right or a copyright, which are held by most of the courts to be unassignable privileges or incorporeal and intangible rights. *Washington Bank of Walla Walla* v. *Fidelity Abstract, supra.*

The Washington Court went on to state that they could not endorse the conclusion or the reasoning of the *Dart* case.

The Supreme Court declined consideration of the issue of literary property rights in *Gentry* v. *Alley,* 228 Ark. 236, 306 S.W. 2d 695 (1957). In that case, Ozark Title Company

contracted with the Berry Land and Abstract Company to film and use its indices with strict limitation as to their use. Contrary to these limitations, Ozark sold the indices film to Gentry. Alley, who had purchased the Berry Land and Abstract Co., upon learning of the sale of the copies of the indices to Gentry and his proposal to set up a competing abstract plant, filed a complaint asking that the Ozark Title Co. be forced to comply with this contract; that the microfilms and all copies thereof be delivered to Alley and that Gentry be enjoined from using the film (or copies thereof) for making abstracts. The trial court ordered Gentry to deliver the original and all copies of the film to Alley. He found that Berry Land and Abstract Co. had literary property rights in the indices and that Alley had not released those rights by permitting the film to be made and that consequently, Gentry acquired no title to them. On appeal, the Supreme Court ruled that it was unnecessary to pass upon the merits of the legal conclusions announced by the chancellor. They sustained the decree on an entirely different ground which the trial court had rejected. The Supreme Court determined that Gentry was not an innocent purchaser when he acquired this set of indices and others for a total consideration of $500. This small of a consideration was calculated to raise suspicions. The Court further ruled that Gentry should have had notice of the history and ownership of the questioned film. The court rejected the literary property right argument and decided the case on a tangible property right basis.

This matter is reversed and remanded with directions to grant appropriate injunctive relief against the use of the duplicate tract books and to determine the extent of appellee's unjust enrichment through the use of appellant's property and to give judgment to the appellant in that amount.

Reversed and remanded.