_____

No. 94-1353
_____

Bob Klein; Genevieve Klein;        *
John Frank Pendergrass; Sam         *
Thompson; Margaret Schaffer;        *
Clymer Law; Donnie Hall;            *
Wayne Franklin, Class               *
Representative; Glen Morris,         *
Class Representative; Rowland       *
Vernon, Class Representative,        *
                                     *
        Appellants,                  *
                                     *  Appeal from the United States
     v.                              *  District Court for the Western
                                     *  District of Arkansas.
Arkoma Production Company;           *
Arkla, Inc.; Arkla Exploration       *
Company; Jerral W. Jones;            *
Michael V. McCoy,                    *
                                     *
        Appellees.                   *
                          _____

             Submitted:  January 11, 1995

               Filed:  January 9, 1996
                          _____

Before BEAM, BRIGHT, and HANSEN, Circuit Judges.
                          _____

BEAM, Circuit Judge.


     Jerral W. Jones and Michael V. McCoy were sole shareholders of
Arkoma, a natural gas production company which held leases with Bob
Klein and other royalty owners.  Jones and McCoy sold Arkoma
(sometimes old Arkoma) to Arkla, an exploration and pipeline
company.  Bob Klein and the royalty owners[1] appeal the district
court's finding that they are not entitled to recover any portion

_____

     [1]The named appellants represent a class of approximately 3000
lessors.

of funds exchanged in the transaction.  The district court, contrary to our earlier mandate, determined that Jones and McCoy had not settled the royalty owners' take-or-pay claims when Jones and McCoy effected the sale of Arkoma to Arkla and further determined that Arkoma had not breached any implied duties to the lessors.  We reverse.

## I.  BACKGROUND

The facts of this case are set forth in our opinion in the earlier appeal of this action and need only be briefly repeated here.  See Klein v. Jones, 980 F.2d 521, 523-25 (8th Cir. 1992) (Klein I).  Jones and McCoy were, as stated, sole shareholders of Arkoma, a gas production company.  Arkoma had leases with the royalty owners (lessors) for mineral rights to property located in the Arkoma basin in western Arkansas.  Under the leases, the royalty owners were entitled to one-eighth of the proceeds from gas produced on the owners' land.  Arkoma received seven-eighths of the gas production proceeds for its "working interest."[2]

Arkoma sold natural gas to Arkla.  One of Arkoma's contracts with Arkla (GPC 5239) had a take-or-pay provision.[3]  Because the price of natural gas fell, Arkla was unable to "take" the gas at the agreed price and was unwilling to "pay" for it.  Accordingly, Arkoma had claims against Arkla for the amounts due under the take-

---

[2]Jones and McCoy, as individuals, also owned and controlled property in the Arkoma basin through several tax partnerships.  These tax partnerships also leased mineral rights to Arkoma.  This factual scenario appears more complicated than it is because Jones and McCoy wore many hats and because the transactions were structured to maximize tax benefits to Jones and McCoy.

[3]A take-or-pay provision is a clause in a gas contract that requires the purchaser to either take delivery of or to pay for the minimal contract volume of gas that the producer/seller has available for delivery.  Under such a clause, the purchaser usually has the right to take gas paid for (but undelivered) in succeeding years (make-up gas).  Klein v. Jones, 980 F.2d 521, 523 n.1 (8th Cir. 1992).

-or-pay provision of the contract. The claims amounted to approximately $36 million by March 1986 and were accruing at the rate of about $3 million per month.

In an effort to resolve the dispute over these claims, Arkla and old Arkoma embarked on a series of negotiations, ultimately resulting in the sale of Arkoma to Arkla. Jones and McCoy received $173 million as a result of the transaction.[4] After the purchase of Arkoma by Arkla, the disputed gas production contract (GPC 5239) was reformed. Under the new contract, Arkla paid new Arkoma (now wholly owned by Arkla) less for its gas, and consequently the royalty owners received lower royalty payments. The royalty owners were not aware of any of this until they received royalty checks at a lower rate in March 1987.

The royalty owners sued in district court for breach of the duty of fair dealing arising from a fiduciary relationship, breach of contract as third-party beneficiaries of the gas purchase contract, tortious interference with a contract, unjust enrichment and breach of implied covenant to market. The district court

---

[4]That sum can be broken down as follows. The parties initially agreed that Arkla would pay at least $73 million for Arkoma, including the stock owned by Jones and McCoy. This amount was subject to an adjustment to account for the results of additional drilling on land subject to the leases. Most of Arkoma's interests in the wells were held in tax partnerships involving Arkoma and others, including Jones and McCoy. Before Arkla's purchase of Arkoma stock, Jones and McCoy acquired the tax partnership interests from others and assigned them to Arkoma. For the assignment of these interests to Arkoma, Jones and McCoy received a $35 million promissory note which was paid the day it was received. Jones and McCoy also received an agreement for Arkla to provide a quantity of gas to Jones and McCoy which agreement was secured by a promissory note for $24 million. Jones and McCoy sold their Arkoma stock to Arkla for $14 million. Additionally, in 1989, pursuant to the 1986 agreement that the amount was subject to an adjustment, Jones and McCoy received another $100 million for the revaluation of gas reserves.

The royalty owners contend that they are entitled to one-eighth of the $24 million payment for the gas purchase contract and one-eighth of one-half of the $100 million payment.

dismissed all claims. The royalty owners appealed to this court and we reversed the dismissal of the unjust enrichment claim and the breach of implied covenant to market claim. Klein I, 980 F.2d at 533.

In Klein I, we determined as a matter of law that the complicated transactions between Arkla, Arkoma, Jones and McCoy for the purchase and sale of old Arkoma included some payment for the "settlement" of the royalty owners' take-or-pay claims. Id. at 525. ("The difference in the fair market value of the reserves [$.83 per mcf.] and the amount paid to Jones and McCoy [$1.62 per mcf.] represented the value paid to Jones and McCoy to settle Arkla's take or pay dispute under GPC 5239"). Noting that this case "cr[ies] for equity," we adopted the so-called "Harrell rule." Id. at 527, 531. Under that rule, oil and gas leases should be construed in a manner so that the lessee and lessor split all economic benefits arising from the land; a royalty should be due on either take-or-pay payments or settlement. Id. at 533 (J. Bright, concurring). We remanded to the district court for further proceedings consistent with the opinion.

On remand, the parties and the court agreed that the remaining claims were the royalty owners' unjust enrichment claims against Jones and McCoy[5] and the royalty owners' breach of implied covenant to market claim against Arkoma.[6] Klein v. Arkoma, No. 90-2060, Mem. Op. at 2-3 (W.D. Ark. Jan. 5, 1994). The district court found the record fully developed on the implied covenant to market claim but took further evidence on the unjust enrichment claim. Id. at 21.

[5]This equitable claim is against Jones and McCoy personally and not against Arkoma as a corporation because it was Jones and McCoy who received the benefit of the "premium" Arkla paid for the opportunity to reform the contract.

[6]This claim is essentially directed at old Arkoma. However, new Arkoma is the same corporation with a new stockholder, Arkla. Because Arkla owns Arkoma, Arkla may also be liable if Arkoma cannot satisfy a judgment.

After trial, the district court found:

> [t]here was no direct proof in the previous record on the question of whether Jones/McCoy had, in fact, settled a take-or-pay claim. It was, rather, for this court on remand to hear the proof and determine what the facts are with regard to that issue. It is therefore unfortunate, in this court's view, that both the majority and concurring opinions in <u>Klein v. Jones</u>, <u>assume</u> that the sale of Arkoma from Jones/McCoy to Arkla amounted to a settlement of a take-or-pay claim existing between the parties. With respect, it is noted that the facts found by this court after a five day trial do not support that assumption.

<u>Id.</u> at 29-30 (emphasis in original) (footnote omitted). The district court found that the take-or-pay claim was not settled until after the sale of Arkoma because GPC 5239 was not reformed until after Arkoma (new Arkoma) was owned by Arkla. <u>Id.</u> at 30. The district court concluded that "Jones and McCoy were legally entitled to receive all they did receive from such sale. They had the legal right to sell their interests in Arkoma (including the [Arkoma] take-or-pay claim) and cannot be said to have been unjustly enriched because they chose to exercise that legal right." <u>Id.</u> at 35. On the breach of implied covenant to market claim, the district court found that the amendment of GPC 5239 "was prudent and reasonable and served to properly comply with the implied duty to market gas which New Arkoma, as lessee under the leases, owed to plaintiffs as lessors." <u>Id.</u> at 63.

The royalty owners have again appealed and the issue, once again, is whether the royalty owners are entitled to share in any portion of the $173 million that Jones and Mccoy received from the various transactions. The royalty owners first contend that the district court failed to follow the mandate of this court on remand. They assert error in the district court's finding that the transaction at issue was not a settlement of the take-or-pay claim and assert that they are entitled to judgment on that claim. They also contend that the district court erred in determining that Arkoma had not breached an implied covenant to market.

-5-

## II.  DISCUSSION

### A.  "Settlement" Finding--Law of the Case

We agree with the royalty owners that the district court failed to follow the mandate of this court.  The district court erred in determining that there had been no settlement of the take-or-pay claim.  In Klein I, we ruled that the funds received by Jones and McCoy included an amount that represented the value to Arkla of its right to reform the take-or-pay contract.  That amount was characterized as a "settlement" of the take-or-pay claims.  The legal conclusion that Jones and McCoy settled the take-or-pay claims is the law of the case and the district court was bound to follow it.[7]

The law of the case doctrine prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties and promote judicial economy.  Bethea v. Levi Strauss & Co., 916 F.2d 453, 456-57 (8th Cir. 1990).  See also Liberty Mut. Ins. Co. v. Elgin Warehouse & Equip., 4 F.3d 567, 570 (8th Cir. 1993).  When a case has been decided by this court on appeal and remanded to the district court, every question which was before this court and disposed of by its decree is finally settled and determined.  Houghton v. McDonnell Douglas Corp., 627 F.2d 858, 864 (8th Cir. 1980).  The district court is bound by the decree and must carry it into execution according to the mandate.  Id.  It may not "`alter it, examine it except for purposes of execution, or give any further or other relief or review it for apparent error with respect to any question decided on appeal.'"  Id. (quoting Thornton v. Carter, 109 F.2d

---

[7]Generally, parties must bring any perceived errors in a panel opinion to the court's attention through a petition for rehearing. Liberty Mut. Ins. Co. v. Elgin Warehouse & Equip., 4 F.3d 567, 571 n.6 (8th Cir. 1993).  We note that no one disputed our characterization of the transactions as a "settlement" in the petitions for rehearing that were filed in the earlier appeal.

-6-

316, 319-20 (8th Cir. 1940)).  Under the law of the case doctrine, a district court must follow our mandate, and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms.  Jaramillo v. Burkhart, 59 F.3d 78, 80 (8th Cir. 1995).

The district court erroneously concluded that our holding was a factual "assumption."  It was not.  It was a legal conclusion. We found that, as a matter of law (regardless of how the parties viewed the several agreements), the various transactions, including the ultimate reformation of GPC 5239, amounted, at least in part, to a "settlement" of the royalty owners' take-or-pay claims.[8] Klein I, 980 F.2d at 531-32.

The interpretation of an unambiguous contract is a question of law.  W.S.A., Inc., v. Liberty Mut. Ins. Co., 7 F.3d 788, 791 (8th Cir. 1993).  The determination that a contract is, or is not, ambiguous is also a legal determination and no deference is paid to the trial court's decision on the issue.  Maurice Sunderland Architecture, Inc. v. Simon, 5 F.3d 334, 337 (8th Cir. 1993). Also, in construing the contract, the court can consider both "the Agreement as a whole" and the "undisputed context in which the Agreement was concluded."  Realex Chem. Corp. v. S.C. Johnson & Son, Inc., 849 F.2d 299, 302 (8th Cir. 1988) (emphasis in original).  There was no dispute in the earlier litigation that the

_____

[8]We note that the district court's rejection of our holding was based mainly on the sequence of events.  The district court did not find that no settlement had ever taken place, but that the settlement did not occur until Jones and McCoy were out of the picture (when the gas purchase contract was reformed).  The district court is wrong for two reasons:  a) we rejected this argument in the first appeal; and b) finding that the actual reformation of the gas purchase contract is the settlement does not reflect economic reality.  There was no consideration for the reformation.  The quid pro quo to enable Arkla to renegotiate the contract was exchanged in December 1986 when Arkla bought Arkoma from Jones and McCoy.  In other words, Jones and McCoy received the money, the "premium" to settle the take-or-pay claims.

-7-

transactions surrounding the sale of Arkoma were the vehicles by which Arkla could reform GPC 5239.

As indicated, we concluded as a matter of law that the sales agreements and supporting documentation amounted to a settlement of the take-or-pay claims.  In consideration of this settlement, Jones and McCoy received a premium, a price for the purported sale of Arkoma which was over and above the market value of its gas reserves and assets.   Klein I, 980 F.2d at 531-32.   Our legal conclusion that the transaction was a settlement was based upon the undisputed context of the negotiations leading up to the agreement: the parties viewed the transactions as part and parcel of an agreement to resolve the take-or-pay claims and the transactions resulted from the negotiations to resolve the take-or-pay dispute. We have again reviewed the record and remain convinced that our conclusion is correct.[9]  In any event, the district court was not free to reject our legal conclusion.

---

[9]It is clear that the transactions amounted to a settlement of the potential claim.  See Appellants' Appendix at 136 (November 25, 1986, Letter from Alan M. Warren, President of Arkla Exploration Co. offering to purchase Arkoma for $75 million dollars, including settlement of take-or-pay claims); Appellants' Appendix at 141 (Handwritten notes headed "Details of Proposed Deal" indicating "value to AEC [Arkla Exploration Co.] under lower pricing scenario approximately 50 mm$--Jones won't settle for less than 75mm$--portion of settlement must be take or pay . . . consultants have indicated that $.80/mcf is a `reasonable' market value for reserves in the ground--have backed into portion of settlement which must be take or pay--24mm"); Appellants' Appendix at 152-157 (Arkla, Inc., Board of Directors' Meeting Minutes, December 17, 1986, containing numerous references to "take-or-pay" and citing elimination of take-or-pay obligation as a benefit of purchase); Appellants' Appendix at 158-179 (Documents presented at December 17, 1986, Board of Directors' Meeting entitled "Reformation of Arkoma Contract and Purchase of Arkoma Production Company").  All of this evidence was available to both the district court and to this court in Klein I.  See Klein v. Arkoma, No. 90-2060 (W. D. Ark. March 4-12, 1991) (Trial Exhibits Nos. 51, 53, 58 and 72).

## B. Unjust Enrichment

The district court initially rejected the royalty owners' unjust enrichment claim on the ground that the royalty owners had a right to recover under their leases and therefore should not be entitled to an equitable remedy. Klein v. Arkoma, No. 90-2060 Preliminary Conference at 13 (Transcript of Findings) (W.D. Ark. March 4, 1991). We reversed that finding. Klein I, 980 F.2d at 533. Normally, when an express contract exists between the parties, unjust enrichment is not available as a means of recovery. Moeller v. Theis Realty, Inc., 683 S.W.2d 239, 240 (Ark. Ct. App. 1985). However, when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice. See, e.g., Roberson Enters., Inc. v. Miller Land & Lumber Co., 700 S.W.2d 57, 59 (Ark. 1985) (imposing conditional cancellation). The leases in this case do not address whether a take-or-pay settlement fits within the definition of the "market value" of gas produced and sold under the leases.[10] Moreover, Jones and McCoy were not parties to the leases. For those reasons, we adopted the Harrell rule, and cited Henry v. Ballard & Cordell Corp., 418 So. 2d 1334, 1338 (La. 1982) for the proposition that courts should construe transactions in such a way that the lessee and lessor split all economic benefits from the land. Klein I, 980 F.2d at 531-32.

A claim for unjust enrichment is an equitable claim. In matters of equity, the court is one of conscience which should be ever diligent to grant relief against inequitable conduct, however ingenious or unique the form may be. Holland v. Walls, 621 S.W.2d

---

[10]Under Hillard v. Stephens, 637 S.W.2d 581, 584-85 (Ark. 1982), a lessor with a "market value" lease has a right to receive from the lessee a percentage of all proceeds the lessee receives from the sale of gas produced under a gas purchase contract. See Klein I, 980 F.2d at 533-34 (the settlement can be viewed as representing how much Arkla was willing to pay to either 1) be released from the contract or 2) pay for gas it had already received under the contract) (J. Bright, concurring).

496, 497 (Ark. Ct. App. 1981).  A court of equity may fashion any reasonable remedy that is justified by proof.  Mid-State Trust II v. Jackson, 854 S.W.2d 734, 738 (Ark. Ct. App. 1993).

Under Arkansas law, a party is unjustly enriched when he has received something of value that belongs to another.  Dews v. Halliburton Indus., Inc., 708 S.W.2d 67, 69 (Ark. 1986).  The measure of damages for unjust enrichment is the amount of unfair gain received by those unjustly enriched.[11]  See, e.g., Holland, 621 S.W.2d at 499.  Here, the evidence shows that Jones and McCoy received a "premium" from Arkla to enable Arkla to reform the gas purchase contract to the detriment of the royalty owners.  The royalty owners never received any of the premium that Jones and McCoy received for the settlement of the take-or-pay claims.

Accordingly, because the evidence establishes as a matter of law that Jones and McCoy settled the take-or-pay claims, and because the Harrell rule entitles lessors to share in all proceeds from the land, we hold that the royalty owners are entitled to recover from Jones and McCoy on their unjust enrichment claim.  We have reviewed the voluminous record in this case and can find no evidence that the royalty owners' rights or interests were separately considered in the negotiations between Jones and McCoy and the Arkla defendants.  We thus conclude that the royalty owners' interest is subsumed within the "premium" that Jones and McCoy received as part of the sale.

We must next determine what part of the funds received by Jones and McCoy in the transactions represented the "premium" paid to enable Arkla to reform the contract.  After review of the record, we find that the $24 million "gas contract" payment

---

[11]In this connection, we note that the only part of the monies exchanged in the transaction that flowed through Arkoma to Jones and McCoy was the $35 million to pay off the promissory note for the assignment of Jones's and McCoy's interests as lessors.  All the other sums were paid directly to Jones and McCoy.  The royalty owners do not claim entitlement to the $35 million payment.

-10-

(secured by a promissory note) represented part of the "premium."[12] The royalty owners are entitled to a one-eighth share of that $24 million. In addition, pursuant to the 1986 agreement, Jones and McCoy received, in 1989, an additional $100 million for revaluation of wells. The evidence shows that the 1989 payment was premised on the 1986 agreement and it also includes part of the premium. The $100 million payment consists of payment of $1.62 for reserves in the ground which were worth $.83 on the spot market. This difference represents the "premium" Arkla paid to reform GPC 5239. Accordingly, the royalty owners are entitled to one-eighth of approximately half ($.83/$1.62) of $100 million. On remand, the district court shall determine the amount with specificity and shall enter judgment against Jones and McCoy in that amount.[13]

### C. Breach of Implied Covenant to Market

The district court found that evidence showed the actions of Arkoma in reforming the contract were prudent and reasonable. Klein v. Arkoma, No. 90-2060, Mem. Op. at 46 (W.D. Ark. Jan. 5, 1994). Although that finding may be correct, that is not the issue. We find that the implied covenant to market under a lease necessarily encompasses not only the duty to make prudent and reasonable business decisions, but the duty to share the proceeds of those decisions with the lessors. The breach in this case is

---

[12]The evidence shows that the "gas contract" was actually an illusory contract. McCoy testified that "[t]here was actually no gas. There was no meter. There was no one selling and no one buying." Trial transcript at 714. This portion of the deal was apparently structured this way so that Arkla could pay in installments. Id. at 711-12. Jones and McCoy received monthly checks from Arkla for non-operational wells. Id. at 712-13.

[13]At oral argument, counsel for the royalty owners stated that the certified class in this case consists of only the Arkansas royalty owners. The Arkansas royalty owners comprise approximately seventy percent of the royalty owners entitled to share in the proceeds. Accordingly, the royalty owners in this litigation are entitled to approximately seventy percent of the award. The district court on remand shall also determine the proper amount to be awarded to these plaintiffs.

neither the decision to settle, nor the decision to reform the contract, but the failure to share the benefits of the settlement with the beneficial owners of those proceeds.

This result is also mandated by our decision in Klein I. In adopting the Harrell rule, we held that the economic benefits of the land must be proportionally split between lessees and lessors of an oil and gas lease. Here, we determined that a "premium" was paid to enable Arkla to reform the contract. As noted earlier, the royalty owners received no share of the premium.

The district court erred when it conflated the cause of action for breach of lease obligations with that of breach of the gas purchase contract. The claim for breach of implied covenant to market arises under the lease. Klein I, 980 F.2d at 526. The district court, discussing the breach of implied covenant claim, states:

> As has been said by both the Court of Appeals and by this court, plaintiffs were incidental beneficiaries with respect to GPC 5239. Thus, these benefits incidentally acquired by plaintiffs when GPC 5239 came into being were in like manner incidentally lost when New Arkoma and Arkla, for prudent reasons, amended GPC 5239.

Klein, No. 90-2060, mem. op. at 44-45. The court further states that "[n]o authority has been cited to the Court to support the notion that the loss of such incidental benefits amounts to a violation of the implied covenant to market which attends a mineral lease." Id. at 60. After first noting that there is no express covenant to sue to enforce take-or-pay obligations under GPC 5239, the district court further states:

> Arkansas law does not recognize any implied covenant on the part of a lessee under an oil and gas lease to file suit to enforce the terms of a gas purchase contract, to which lessee is a party, for the benefit of the lessor under the said lease who is neither a party nor a third party beneficiary with respect to the said gas purchase contract.

-12-

Id.

In Klein I, we affirmed the holding that the landowners could not maintain a suit for breach of the GPC 5239 contract. Klein I, 980 F.2d at 527. However, the question of breach of implied covenant to market is a completely different issue. The implied covenant arises in and from the leases and is not premised upon GPC 5239, except that GPC 5239 may be evidence that defines the extent of the duty or that measures damages flowing from its breach.

To affirm the district court's holding would mean that the royalty owners' status as incidental beneficiaries of GPC 5239 precludes their claim to enforce an implied covenant to market under the leases. That result would effectively negate our earlier finding that there is such an implied covenant.

The flaw in the district court's implied covenant analysis is that it assumes that the only way to satisfy the implied covenant would have been to sue to enforce the GPC 5239 take-or-pay obligations.[14] To the contrary, it may have been reasonable for Arkoma to forego suing Arkla on the take-or-pay claims for a premium reflected, as in this case, in the monies paid in the transactions involving the sale of the corporation. However, in order to fulfill its obligations to its lessors, Arkoma needed to ensure that the landowners received a portion of the funds paid by Arkla as a premium.

---

[14]To that end, there was much testimony about the value and prospect of success of the potential claim. That evidence is irrelevant because the value has already been determined by the amount Arkla was willing to pay to settle the potential claim. The prospect of success is likewise irrelevant since the claim was settled, not litigated.

-13-

We hold that Arkoma breached a duty under the implied covenant to market owed to the lessors under the leases. This breach occurred when Arkoma failed to retain and pay over to the royalty owners a proportionate share of the premium paid by Arkla to settle the take-or-pay claims. Accordingly, the class is entitled to judgment against Arkoma under the implied covenant to market.

The liability here is primary as to Jones and McCoy and secondary against Arkoma. After all, Jones and McCoy actually received the monies rightfully belonging to the Arkansas royalty owners. See supra at 10 n.11.

The dissent charges the court with three errors and then concludes that Jones and McCoy are entitled to $173 million while the owners of the land from which the gas is extracted are due zero dollars. The court disagrees and responds briefly to each concern.

The dissent first insists that we commit a factual error when we speak of the royalty owners take-or-pay claims, asserting that the claims belong only to Arkoma. Infra at 17-18. The significance of Klein I and its adoption of the Harrell rule is that the royalty owners are entitled, by virtue of the leases, to a proportionate share of Arkoma's take-or-pay claims. Klein I, 980 F.2d at 531-32. Also, the dissent, like the district court, confuses the royalty owners' contract rights under the leases with those under GPC 5239. Supra at 12-13.

Next, the dissent challenges both the fact of and the correctness of this court's finding in Klein I that a settlement had been reached. Infra at 18-20. That we found as a matter of law that the contracting parties had settled the take-or-pay claims is beyond dispute. Both the parties and the district court recognized this result on remand. Klein v. Arkoma, No. 90-2060, Mem. Op. at 30 (W.D. Ark. Jan. 5, 1994). In challenging the correctness of the decision, the dissent charges us with appellate court factfinding under the guise of deciding a question of law.

-14-

Infra at 21.  In doing so, the dissent disregards the trial court record and also misapprehends Arkansas law.

We strongly disagree that any appellate court findings of fact were made in either Klein I or in this decision.  The dissent quotes statements by the district court in Klein I to show that settlement of the take-or-pay claims was in dispute.  The dissent then turns the district court's legal observation that "I don't think the plaintiffs [royalty owners] have a right to any portion of the proceeds of a settlement of a take or pay obligation," into a "recognized . . . genuine factual dispute."  Infra at 19.  The basis for this legal/factual metamorphosis is difficult to perceive.

Admittedly, the settlement issue was hotly contested, but it was the legal question of whether and upon what terms a settlement was reached, rather than the facts surrounding the events of December 1986, that was in dispute.  Resolution of the issue did not, and does not, involve deciding issues of fact.  Whether a contract (here, the settlement agreement) is formed is a question of law.  For example, if it is undisputed that party one says "I will give you ten dollars if you won't sue me" and party two says "okay", this court, or any court, is free to determine, as a matter of law, that the transaction constitutes a settlement calling for a payment of $10 to party two.  That is exactly what this court did in Klein I.  The court considered and relied upon undisputed documentary evidence that had been presented to the district court and found that the transaction amounted to a settlement.  Supra at 8 n.9.  We merely construed unambiguous contracts in the context of undisputed facts, all the while viewing the evidence most favorably to the nonmoving parties.  Within this context we applied the Harrell rule to determine who would receive portions of the agreed upon amounts.

Building on its misapprehension of the factual/legal situation, the dissent cites Rowland v. Worthen Bank & Trust Co.,

-15-

680 S.W.2d 726, 728 (Ark. Ct. App. 1984) as support for the proposition that "[u]nder applicable Arkansas law, whether or not a settlement was made is an issue of fact for the trier of fact." Infra at 20-21. The Rowland case simply does not stand for that proposition. The issue in Rowland was whether a lawyer, as a matter of law, may bind a client to an agreement [by the lawyer] to settle a claim. Rowland, 680 S.W.2d at 727. The trial court said no. Id. The Arkansas Court of Appeals reversed, holding that the settlement was, indeed, binding as a matter of law. Id. at 728. The court conceded that the extent of the authority a client may grant to his lawyer may be a question of fact. Id. However, in Rowland, as here, when the context within which the settlement is achieved is not in dispute, whether a settlement was reached and the interpretation of the terms and conditions of such settlement are questions of law for the court. These questions are precisely what this court was entitled to answer and did answer in Klein I. These legal conclusions were binding upon the district court on remand.

The dissent's claims of appellate court factfinding appear to be bottomed on the posture of the appeal in Klein I as an appeal from a motion for summary judgment. Infra at 18. Notably, in Klein I, the district court had granted summary judgment in favor of Jones and McCoy on all claims except the breach of implied covenant to market claim. Klein I, 980 F.2d at 526. That claim was fully tried. Id. The evidence with respect to the threshold issue of whether the take-or-pay claims had been settled is the same with respect to all claims. As noted, all of the facts on which this court relied had been presented to the district court. Supra at 8, n.9.

Finally, the dissent's objection to the court's covenant to market holding is incorrect as well. The dissent construes the various agreements and states, "I disagree with the court's basic conclusion that Jones and McCoy were paid anything as individuals to settle the take-or-pay dispute between the two corporations, but

-16-

instead were paid only for the value of Arkoma itself." <u>Infra</u> at 22. However, when you cut through the form and get to the substance of this dispute, as outlined <u>supra</u> at 3 n.4 and 8 n.9, you find, under the dissent's approach, that Jones and McCoy would have been paid $173 million for all of the stock in a $14 million company. Every dollar beyond the $14 million paid for the Arkoma stock represented payment for either the oil reserves owned by Jones and McCoy or the take-or-pay interests held by Jones and McCoy, as individuals, and by the royalty owners. If Jones and Mccoy were entitled to direct or indirect compensation for their take-or-pay claims, so were the royalty owners. Thus, all of the maneuvering by Jones and McCoy to the contrary, the undisputed record simply fails to establish that the royalty owners had no lawful right to part of the settlement reached with Arkla.

## III. CONCLUSION

For the reasons set forth above, the judgment of the district court is reversed and this action is remanded to the district court for entry of judgment against Jones, McCoy and Arkoma in an amount to be determined by the district court, together with interest as provided by law.

HANSEN, Circuit Judge, dissenting.

I respectfully dissent.

First, the court errs factually when it speaks of the "royalty owners' take-or-pay claims". <u>Supra</u>, at 2, 4. The only "take-or-pay claims" that existed in this case were those held by Arkoma against Arkla arising out of Arkla's refusal to either take or pay pursuant to one or more of eight gas purchase contracts (the most notable of which is GPC 5239) between the two corporations. The take-or-pay claims against Arkla were always contract rights and nothing more. The take-or-pay claim in GPC 5239 was not held by the plaintiffs, and most certainly not by Jones and McCoy as

-17-

individuals, but solely by the plaintiffs' lessee, Arkoma. It was always a corporate asset of Arkoma's, a receivable, if you will, of disputed and doubtful value heavily laden with litigation risks. In the first appeal we held that the plaintiff royalty owners were not even third party beneficiaries of GPC 5239, holding them to be "at the most, incidental beneficiaries." Klein v. Jones, 980 F.2d 521, 527 (8th Cir. 1992) (Klein I). Their claims, if any, must be bottomed on their leases with Arkoma, and as I understand it, their unjust enrichment claims in this lawsuit are that Jones and McCoy failed to share with them some of the monies Jones and McCoy received when Jones and McCoy sold their individual interests in Arkoma to Arkla's wholly-owned subsidiary, Arkla Exploration Company. Or as the plaintiffs' counsel put it at oral argument, "They got theirs--we didn't get ours."[1]

Second, I most respectfully disagree with our court's first and basic premise that this court concluded as a matter of law in the first appeal that an identifiable and discrete part of the money Jones and McCoy received from the sale of Arkoma represented a "settlement" of the take-or-pay dispute between Arkla and Arkoma. If it was anything, our prior comment that "[t]he difference in the fair market value of the reserves and the amount paid to Jones and McCoy represented the value paid to Jones and McCoy to settle Arkla's take or pay dispute under GPC 5239," id. at 525, was an unnecessary and exceptionally inappropriate appellate court fact-finding, and we should candidly recognize it as such. It must be remembered that this case first came to us on a grant of summary judgment by the district court (Morris S. Arnold, J.) purely on a question of law. Whether the take-or-pay claim held by Arkoma

---

[1] Contrary to the criticism made by my brothers, supra, at 14, 17, in my view the royalty owners are entitled to everything their leases entitle them by applying the "Harrell Rule" to let them share in the settlement of the take or pay contracts. As outlined herein, my dispute is with the court's adamant insistence that the first appeal decided as a matter of law that the take or pay contracts were settled by payments to Jones and McCoy and the terms of such a settlement.

-18-

against Arkla had in fact been settled by any of the payments made to Jones and McCoy was hotly contested in the summary judgment papers filed with the trial court.  The district judge acknowledged the disputes of fact about the "settlement" of the take-or-pay claim that existed at the time of the submission of the summary judgment motion:

> The briefs are full of a lot of argument about whether or when this take or pay contract was settled, whether it was settled when Arkoma was sold and Mr. Jones and Mr. McCoy got money for their stock and some other things, or whether it was settled when in fact Arkoma entered into a new agreement with the Arkla companies.

(JM App. at 2-3.)  Having recognized the genuine factual disputes before him about "whether or when this take or pay contract was settled," the district judge went on to say:

> But I don't think it matters, at least not on this level, when or if the contract was settled, because I don't think the plaintiffs have a right to any portion of the proceeds of a settlement of a take or pay obligation.

(Id. at 3.)[2]  It was on that issue of law that we reversed the district court's grant of summary judgment to Jones and McCoy and

---

[2]The court's majority misreads this dissent.  Supra, at 15. As stated above, the genuine factual disputes recognized by the first district judge were "whether or when this take or pay contract was settled."  The only metamorphosis which occurs is when the majority takes those recognized and existing factual disputes as to "whether and upon what terms a settlement was reached," supra, at 15, and now says they were really questions of law decided by the first appeal.  The real question of law involved in the first appeal was whether the first district judge was right when he said that royalty owners had no right to any portion of the proceeds of a settlement of a take or pay contract.  We said that the district court was wrong, and that royalty owners, under the "Harrell Rule," have a right to share in the settlement of a take or pay contract between their lessee and a pipeline company.  I do not disagree with that legal conclusion.

-19-

adopted the "Harrell Rule."  For our court to say today that "[o]ur legal conclusion that the transaction was a settlement was based upon the <u>undisputed</u> context of the negotiations leading up to the agreement . . .", <u>supra</u>, at 8 (emphasis added), is directly contrary to the record before the district court at the time it granted summary judgment and cannot be correct.  Like the district court, it was not necessary "on this level" for this court to decide in <u>Klein I</u> "whether or when this take or pay contract was settled" (let alone what was paid to settle it, which is also what the court now says the first opinion did and what it is now trying to enforce).  All we had to decide in <u>Klein I</u> was whether royalty owners had a legal entitlement to share in the settlement of a take or pay contract and leave to the district court on remand to determine the factual issues of what, when, whether, and how settlement occurred.

We consistently reverse district judges who decide disputed issues of fact in determining summary judgment motions. <u>See Teleconnect v. Ensrud</u>, 55 F.3d 357, 360 (8th Cir. 1995) ("The summary judgment mechanism is not designed to forecast the work of the finder of fact."); <u>Oldham v. West</u>, 47 F.3d 985, 989 (8th Cir. 1995).  We should be willing to take the same medicine we dose out and recognize our own errors when we make them.  We are not allowed on appeal to weigh the evidence and resolve disputed questions of fact.  <u>McCurry v. Tesch</u>, 824 F.2d 638, 640 (8th Cir. 1987) ("The trial court is the place for the facts to be found. Appellate courts should not find the facts . . . .").  Rather, on appeal from a grant of summary judgment as in <u>Klein I</u>, we are only authorized to view the evidence in the light most favorable to the nonmovant (not to determine what disputed facts that evidence proves) and then to decide whether the movant has "established its right to a judgment with such clarity as to leave no room for controversy . . . ." <u>Kegel v. Runnels</u>, 793 F.2d 924, 927 (8th Cir. 1986).  Under applicable Arkansas law, whether or not a settlement was made is an issue of fact for the trier of fact. <u>Rowland v. Worthen Bank & Trust Co., N.A.</u>, 680 S.W.2d 726, 728 (Ark. App.

1984) ("The Court of Appeals cannot act as a factfinder. We must therefore reverse and remand this matter to the trial court so that a further hearing may be held to determine whether a settlement had been made . . . ." (citation omitted)).[3] We committed fundamental error in Klein I when we included in the "FACTS" portion of the opinion the resolution of what everyone in the district court knew were hotly disputed fact issues -- "whether or when this take or pay contract was settled." Because Jones and McCoy had no opportunity in the summary judgment setting to obtain a ruling from the district judge on the disputed issues of fact before the first appeal, they were not and should not be bound on remand by our court's statements on the factual issues. See International Union, UAW v. Mack Trucks, Inc., 917 F.2d 107, 110-11 (3d Cir. 1990), cert. denied, 499 U.S. 921 (1991).

Nor are we now correct, and in truth we compound our error, when we take what was an unwarranted appellate court fact-finding, call it a "conclusion of law," and then use it as "the law of the case" to reverse carefully considered detailed findings of fact made by the district judge after hearing all of the evidence in a five-day trial. Our gratuitous finding (or "assumption" as the district judge more politely characterized it on remand) was not only unwarranted, ill-advised, and inappropriate, it was, as the

_____

[3]Contrary to the majority's criticism, supra, at 15-16, Rowland is directly on point. In Rowland, as it was in this case with respect to the first appeal, only a question of law was before the appellate court. It was precisely because the Arkansas trial court had made no findings of fact about "whether, under the facts of this case, a settlement in fact had been made. . ." (680 S.W.2d at 728) (emphasis added) that the Arkansas appellate court remanded to determine if a settlement had in fact been made. At the risk of repetition, then District Judge Arnold, just like the state trial judge in Rowland, made no fact-finding about "when or if the contract was settled" (JM App. at 3), because, just like the state trial judge in Rowland, he decided the case on a question of law. The difference between our court and the Arkansas Court of Appeals is that the state appellate court correctly declined the opportunity to look at the facts in the record as they existed before the trial court and make the factual determinations that a settlement had, in fact, been made (and also its terms) as our court erroneously does.

district judge's meticulous fact-findings on remand demonstrate, clearly wrong.

We can still correct rather than compound our previous error by now treating our prior finding not as either established fact or as the law of the case, but as what it should have been -- a recitation of the evidence as viewed in the light most favorable to the nonmoving plaintiffs at the time the trial court granted summary judgment against them. Then we are free to do that which the law requires us to do now -- review the findings of fact made by the district court on remand for clear error. Having done so, I would affirm the district court on the unjust enrichment claims made by the plaintiffs against Jones and McCoy.

I also dissent from the court's opinion with respect to the implied covenant-to-market claim made against the Arkla defendants. The court pegs its conclusion of liability on a determination that "Arkoma failed to retain and pay over to the royalty owners a proportionate share of the premium paid by Arkla to settle the take-or-pay claims." Supra, at 14. The "premium" the court is talking about is the "premium" the court erroneously finds Jones and McCoy were paid as individuals to settle the take-or-pay dispute pursuant to the terms of the December 31, 1986, transactions. Supra, at 10-11. Because I disagree with the court's basic conclusion that Jones and McCoy were paid anything as individuals to settle the take-or-pay dispute between the two corporations, but instead were paid only for the value of Arkoma itself, which included whatever present contingent asset value the take-or-pay dispute with Arkla may have had to Arkoma, I cannot concur with the court's conclusion about Arkoma's responsibility to retain some of the monies paid by Arkla for the plaintiffs' benefit. In addition, any monies paid by Arkla went directly to Jones and McCoy without passing through Arkoma. There was nothing for Arkoma to "retain." In my view, the implied covenant-to-market claim only reaches the actions of New Arkoma in renegotiating its contract rights in GPC 5239. (The reader must remember that the

plaintiffs had no legally enforceable rights in the contract and were only incidental beneficiaries thereof.)  With respect to that issue, I agree with the district court that there was no violation of any such implied covenant.  The actions taken by New Arkoma in negotiating an end to the stalemate were similar to those taken by many other producers with disputed take-or-pay contracts, and resulted in the movement of the plaintiffs' gas out of the ground at better than existing market prices with royalties being paid.[4]  Its actions in renegotiating GPC 5239 meet the test we set out in Klein I -- "The test of compliance with an implied covenant is that of a reasonable developer."  Klein I, 980 F.2d at 532.   In fact, given the market conditions then existing, it probably would have been imprudent not to have renegotiated the contract.  See Frey v. Amoco Prod. Co., 603 So.2d 166, 176 (La. 1992) (While making a long term contract containing a take-or-pay provision with pipeline company was originally prudent, producer "would also likely be deemed to have acted imprudently" if it failed to renegotiate in face of pipeline's financial inability to fully perform take or pay given market conditions.).  Although the following quotation may be subject to the criticisms made herein, this court said as much in Klein I:

> In this case the take-or-pay elements in the developers [sic] contracts with the pipeline/marketer were, because of Federal Energy Regulatory Commission intervention, literally bankrupting the pipeline, and those facts must be considered in evaluating the reasonableness of defendants' actions.  We find it reasonable for the defendants to make some effort to liquidate the take-or-pay obligations of AEC.

---

[4]The majority again errs in its reading of this dissent. Under the district court's judgment, which should be affirmed, the royalty owners received the benefit of the above market prices contained in the renegotiated take or pay contract which reopened their wells.  For the first time since the take or pay dispute arose, they began receiving real dollars, not "zero dollars."  They were receiving zero dollars, i.e., nothing, all the while the unresolved take or pay contract dispute between Arkoma and Arkla caused their gas to remain shut in and no production occurred.

-23-

Klein I, 980 F.2d at 526.  Plaintiffs have failed to show that the district court's fact-findings on this claim are clearly erroneous; the evidence fully supports the trial court's determination that no violation of the implied covenant to market gas in a reasonable and prudent manner occurred, and I would affirm its judgment in all respects.

Accordingly, I respectfully dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.