Ray ROWLAND *v.*
WORTHEN BANK & TRUST COMPANY, N.A.

CA 84-47                                    680 S.W.2d 726

Court of Appeals of Arkansas
Division II
Opinion delivered December 12, 1984

*Hal Joseph Kemp, P.A.,* and *Julius Bracy Cross, Jr.,* for appellant.

*Allen, Cabe & Lester, P.A.,* for appellee.

LAWSON CLONINGER, Judge. The crucial issue on this appeal is whether the trial court erred in ruling that, as a matter of law, an attorney may not bind his client by an agreement to settle his client's claim. We believe that the court ruled incorrectly, and we must reverse and remand.

Appellee sued appellant and another defendant, R.G. Parham, Jr., on a promissory note in the principal amount of $25,100. On February 10, 1983, appellant's attorney, Jack Young, wrote a letter to appellee's attorney, James H. Penick III, in which he suggested a settlement of the case involving appellee's payment of a total of $5,000 in monthly installments over a period of thirty-six months in exchange for (1) a full release of appellant or a covenant not to sue, and (2) a full release of appellant by Parham of any right of contribution against appellant. Another element of the proposed settlement, arising from contemporaneous oral conversations between the two attorneys, was a second mortgage on appellant's house.

In a letter dated March 1, 1983, Mr. Penick wrote Mr. Young: "I hope that the agreement which we discussed earlier is in the making, and if it is not, I would appreciate your putting it on a priority of things to do." Mr. Young assumed from the language of the letter that Mr. Penick had appellee's authority to agree to the proposed settlement terms and was merely awaiting the detailing of terms and settlement documents. Mr. Penick, however, had not yet submitted the proposed settlement to appellee and was awaiting further documentation from Mr. Young before doing so.

On March 4, 1983, Mr. Young sent Mr. Penick a draft covenant not to sue and changed the terms from a note to cash payment. Mr. Penick then discussed with Mr. Young some problems concerning the language of the covenant not to sue. On March 10, 1983, Mr. Penick communicated

appellant's offer to appellee, which then rejected the offer. Mr. Penick informed Mr. Young of the rejection orally on March 15.

Appellant thereafter filed an amended answer pleading settlement and accord and satisfaction. Both Mr. Young and Mr. Penick resigned as attorneys in order to testify as witnesses. The case was tried before the circuit judge acting as jury. The court ruled for appellee, awarding it judgment for the full amount of the $25,100 note plus accrued interest, costs, and attorney's fee. The judgment, filed on August 2, 1983, states: "That as a matter of law an attorney may not bind his client by an agreement to settle his client's claim." No finding of fact was made regarding the exchange of proposals between the two attorneys.

Appellant argues that the trial court erred in holding that, as a matter of law, an attorney may not bind his client by an agreement to settle his client's claim. He insists that an examination of the letters and the behavior of Mr. Penick indicates that the attorney had implied authority to bind appellee to the purported agreement. Although we do not in this opinion either endorse or reject appellant's view that Mr. Penick was clothed with authority, we must agree with his contention that the trial court erred in stating that *as a matter of law* an attorney may not bind his client by a settlement agreement.

Appellant relies upon the case of *Laird* v. *Byrd,* 177 Ark. 1114, 9 S.W.2d 800 (1928), as authority for a determination by the reviewing court of the existence and extent of an attorney's authority by inference from his correspondence and statements. As the Supreme Court noted, however, in distinguishing *Laird* in *Ashworth* v. *Hankins,* 248 Ark. 567, 452 S.W.2d 838 (1970), the evidence in the earlier case suggested that the attorney had been "clothed with authority" by his client, whereas no evidence of such authorization by a client was apparent in the latter case. We make no decision with respect to the scope of authority suggested by Mr. Penick's letter, but we commend to the trial court's notice the distinction in *Ashworth.*

According to appellee, the controlling cases on this appeal are *Cullin-McCurdy Const. Co.* v. *Vulcan Iron Works,* 93 Ark. 342, 124 S.W. 1023 (1910), and *McCombs* v. *McCombs,* 227 Ark. 1, 295 S.W.2d 744 (1956). In the former case, the appellant attempted to establish at trial that one of the appellee's trial attorneys had entered into an agreement with the appellant to compromise the appellee's claim. The Arkansas Supreme Court upheld the trial court's exclusion of evidence of the alleged settlement because no testimony had been offered to show that the attorney had any authority to act for the appellee other than to prosecute the action. Speaking of the lawyer, the court said "it was not within the scope of his authority as attorney to compromise with appellant, or to release the latter from liability, or to shift that liability by making a new contract with another to assume it."

In the *McCombs* case, *supra,* the Supreme Court cited *Cullin-Murdy Const. Co., supra,* with approval and stated:

> The law is well settled that an attorney, as here, employed to conduct litigation involving property, has no implied or apparent authority by reason of his employment, to bind his client in regard to the subject matter of the litigation except with respect to matters of procedure. . . . 'It is a general principle that an attorney cannot by virtue of his general authority as attorney, bind his client by any act which amounts to a surrender or waiver in whole or in part of any substantial right of the client. . .'

As recently as *Walker* v. *Stephens,* 3 Ark. App. 205, 626 S.W.2d 200 (1981), we endorsed the holdings in both of the above-cited cases, noting:

> It is well settled that an attorney's contract of employment implies that he is authorized to take those procedural steps deemed by him to be necessary and proper in the conduct of the litigation whether in pursuit or defense of the claim. His actions in those matters, in the absence of fraud, are regarded as the acts of his client who is bound by those actions, but the mere

fact that counsel is retained does not, in and of itself. carry an implication of authority to compromise his client's claim and to hold otherwise would vest the attorney with far more power than his retainer requires or implies.

The language of these two quoted cases indicates the degree to which an attorney's authority to act outside procedural bounds is circumscribed by the facts in any given case.

It is precisely at this point that the trial court committed reversible error. The judge's choice of words in his statement that "as a matter of law" a lawyer may not bind his client by an agreement to settle his client's claim is simply too broad, for, as the cases above indicate, a client may clothe his attorney with as much or as little authority as he deems appropriate for the satisfactory conduct of his affairs. In arriving at its conclusion of law, the trial court made no finding of fact concerning the character of the relationship between attorney and client. In *Laird* v. *Byrd, supra,* the Arkansas Supreme Court concluded that the trial court had properly submitted the question of the scope of the attorney's authority to the jury. Here, however, the issue was foreclosed by the trial court's failure to determine whether, under the facts of the case, a settlement had in fact been made by an attorney vested with adequate authority.

The Court of Appeals cannot act as a factfinder. *Bagwell* v. *Falcon Jet Corp.,* 8 Ark. App. 192, 649 S.W.2d 841 (1983). We must therefore reverse and remand this matter to the trial court so that a further hearing may be held to determine whether a settlement had been made and whether Mr. Penick was authorized to make a settlement.

CORBIN and COOPER, JJ., agree.