Mary DEWITT v. Carnell JOHNSON and Pamela Akins

01-1346 77 S.W.3d 530

Supreme Court of Arkansas
Opinion delivered June 13, 2002

*Robert Scull, P.A.*, by: *Robert Scull*, for appellant.

*Bennie O'Neil*, for appellee.

DONALD L. CORBIN, Justice. The issue in this case is whether an attorney had authority to settle his client's ejectment case. Appellees Carnell Johnson and Pamela Akins filed a petition for ejectment against Appellant Mary Dewitt on August 20, 1999. Trial was set for June 12, 2000, in the Pulaski County Circuit Court. On that same date, the parties' attorneys notified the court that the matter was settled. The settlement provided that Dewitt would surrender possession of the property in one year, and, in exchange, Johnson and Akins would pay her $5,500 for improvements that she had made to the property. Thereafter, Dewitt advised her attorney, Donald S. Ryan, that she did not wish to consummate the settlement.

On August 21, 2000, the trial court held a hearing to determine whether Ryan had been authorized by Dewitt to make the settlement. After hearing testimony from Ryan and Dewitt, the trial court concluded that Ryan had been authorized to enter into the foregoing settlement. An order reflecting the court's ruling was entered on August 23, 2000. Dewitt appealed to the Arkansas Court of Appeals, which dismissed the appeal for lack of a final order. *See Dewitt v. Johnson*, CA 00-1240 (Ark. App. June 13, 2001). On remand, the trial court entered a new order that concluded the litigation, and Dewitt again appealed. The case was then certified to us pursuant to Ark. Sup. Ct. R. 1-2(a)(5). For reversal, Dewitt argues that Ryan did not have authority to settle her case and that the trial court erred in concluding otherwise. We find no error and affirm.

During the August 21, 2000, hearing, Ryan described his recollection of the settlement conversation he had with Dewitt:

> But I told Mary that as I understood the law and the facts, she had no interest in the property. She had done some betterments. And the offer was $5,500, payable over a year, where she could stay there in there for a year. . . .
>
> Mary is a friend of mine, as well as a client. I've done other stuff for [her] and her family over the years. And I was very concerned that if we went to trial, she might not get anything. When they offered that money, I made a strong argument to her that she should settle it. Mary was emotional and upset, and then she — the consent she gave me consisted of this, Judge. She said, "Well, it sounds like I really have no choice." And I said, "You really don't."
>
> I've got to say she never said, "That's a good settlement. Take it." She never said, "Take the money." But I then called [opposing counsel] and told her that it was settled, call the court, call the witnesses. And after that, [Mary's] son, Bill, called me and said, "Mother is in here crying and upset, and she doesn't want to take it." So I felt it was settled, but it was on my strong recommendation. And Mary was emotional and upset at the time. But I thought she was telling me to take it, so I said take it, because I felt it was as good a deal as she could get.

Upon further questioning by the trial court, Ryan again stated that in his mind, he had the authority to settle the case.

The court then asked Dewitt if that was the way she remembered the events. Dewitt stated that she remembered talking to Ryan about the settlement, but that she could not recall the conversation "word for word." She stated that she did not recall saying "it sounds like I have no choice." She further indicated that she just did not remember what she had said. Later on, however, Dewitt told the court that she had not said "it sounds like I have no choice." At that point, the trial court decided that both Ryan and Dewitt should give formal testimony.

During his sworn testimony, Ryan recounted his conversation in substantially the same way he had done before being placed under oath. Ryan also testified that when Dewitt told him "It sounds like I have no choice," he said: "Based on that, I'm going to settle your case." He stated that Dewitt did not say anything after that. Ryan stated, "I took it as her approval for me to settle the case, based on my best judgment of what she should do." On cross-examination, Ryan admitted that Dewitt had told him that the offer was not enough money to cover what she had been through and that it would not cover the amount of money that she had put into the property. Ryan also admitted that Dewitt told him that she did not think that the offer was a good deal. Ryan, however, responded to her concerns by giving her reasons why, in his judgment, she should settle the case.

Dewitt then testified. She stated that she did not think that it was fair that Johnson could come in and kick her off the property and only give her $5,500. She recalled telling Ryan that what Johnson was doing to her was not fair, and that $5,500 was not enough to cover what she had gone through in remodeling what previously had been a restaurant into a home. The court then asked Dewitt if she recalled the conversation with Ryan in which she said that she did not have any choice in the matter. Dewitt responded, "No, sir." The court then asked, "Are you saying that didn't happen?" Dewitt then stated, "I'm saying I don't remember it."

Following Dewitt's testimony, the trial court ruled that Ryan had authority to settle Dewitt's case. The trial court found significant Ryan's testimony that Dewitt had told him that it sounded like she had no choice. For reversal, Dewitt argues that the trial court erred in finding that Ryan had authority to settle her case. She relies on Rule 1.2(a) of the Model Rules of Professional Conduct, which provides in part: "A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." For the reasons set out below, we affirm the trial court's ruling.

■ The law is well settled that an attorney employed to conduct litigation involving property has no implied or apparent authority, solely by reason of his or her employment, to bind the client in regard to the subject matter of the litigation, except with respect to matters of procedure. *McCombs v. McCombs*, 227 Ark. 1, 295 S.W.2d 774 (1956); *Cullin-McCurdy Constr. Co. v. Vulcan Iron Works*, 93 Ark. 342, 124 S.W. 1023 (1910). Stated another way, an attorney cannot, by virtue of his or her general authority as attorney, bind the client by any act that amounts to a surrender or waiver, in whole or in part, of any substantial right of the client. *McCombs*, 227 Ark. 1, 295 S.W.2d 774. "An attorney is not permitted to compromise his client's cause of action or judgment without permission." *Turner Furnishing Goods Co. v. Snyder*, 201 Ark. 699, 702, 146 S.W.2d 913, 914 (1941).

■ ■ The question presented in this appeal is: What constitutes permission or authority to settle? This court and the court of appeals have recognized that an attorney's authority to compromise or settle the client's claim may be apparent or inferred from the client's actions and communications, regardless of whether the client has expressly instructed the attorney to settle the case. *See Laird v. Byrd*, 177 Ark. 1114, 9 S.W.2d 571 (1928); *Rowland v. Worthen Bank & Trust Co.*, 13 Ark. App. 139, 680 S.W.2d 726 (1984); *Walker v. Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981). "[A] client may clothe his attorney with as much or as little authority as he deems appropriate for the satisfactory conduct of his affairs." *Rowland*, 13 Ark. App. at 143, 680 S.W.2d at 728. Thus, whether an attorney has authority to settle or compromise the client's case is a question for the trier of fact to determine. *See Brady v. Bryant*, 319 Ark. 712, 894 S.W.2d 144 (1995);

*Laird*, 177 Ark. 1114, 9 S.W.2d 571; *Rowland*, 13 Ark. App. 139, 680 S.W.2d 726; *Walker*, 3 Ark. App. 205, 626 S.W.2d 200. In reviewing a finding of fact by a trial judge, we view the evidence and all reasonable inferences therefrom in the light most favorable to the appellee. *Brady*, 319 Ark. 712, 894 S.W.2d 144. We will not reverse the trial court's findings unless they are clearly erroneous. *Id.* Any conflicts in the testimony are for the trial court to resolve, and we will defer to the trial judge's superior position to judge and determine the credibility of the witnesses. *Id.*

 Here, there was conflicting testimony given by Ryan and Dewitt. Ryan stated that on the date the case was scheduled for trial, he informed Dewitt of the settlement offer made by Johnson and Akins. Ryan stated that he strongly advised Dewitt to take the offer based on his legal judgment that she would likely get nothing if the case went to trial. Ryan stated that Dewitt then stated: "It sounds like I have no choice." Ryan admitted that Dewitt never expressly told him to settle the case or take the offer. However, Ryan viewed her statement about not having a choice as authorizing him to settle her case. Indeed, he testified that when she made the statement, he responded by stating: "Based on that, I'm going to settle your case." Dewitt did not say anything after that, and Ryan took her silence as further approval for him to settle her case. Dewitt initially told the trial court that she did not tell Ryan "It sounds like I have no choice." Under oath, however, Dewitt merely stated that she did not recall making the statement.

Viewing the evidence in the light most favorable to Johnson and Akins, we cannot say that the trial court was clearly erroneous in finding that Ryan had authority to settle Dewitt's case. The trial court clearly believed that Ryan's testimony was more credible than Dewitt's. As the trier of fact in this matter, the court was well within its discretion in assigning more weight to Ryan's testimony. Accordingly, we must affirm the trial court's judgment enforcing the settlement between the parties.

IMBER, J., not participating.