DAVID M. GLOVER, Judge
The issue in this case is whether the parties reached a full and complete settlement agreement of their claims. The Faulkner County Circuit Court determined the parties did and entered an order compelling execution of the settlement agreement. On appeal, appellants argue that the court's determination is clearly erroneous, is a misapplication of Arkansas contract law relating to settlement agreements, and should be reversed and remanded. We agree.
I. Litigation History
In 2008, appellant Terra Land Services, Inc. ("Terra"), whose shareholders were Samantha Smith ("Smith") and Jim Tom Bell ("Bell"),[1] entered into a partnership with McVesting, LLC ("McVesting"), whose sole member was Jerry McIntyre ("McIntyre"), to purchase and lease mineral interests. The parties agreed McVesting *427 would own legal title to the property the partnership purchased.
In August 2012, McIntyre informed Terra he no longer recognized Terra's ownership interest in the partnership; Terra sued both McIntyre and McVesting for breach of the partnership agreement. In an amended complaint, Terra alleged McVesting's "Articles of Organization" were amended in September 2008 to add Terra as a member of McVesting (with Terra owning 70% and McIntyre owning 30%); asserted McIntyre had assumed possession of all McVesting's books, records, funds, and other property in contravention of Terra's rights as majority owner; and requested a full accounting and damages for any monetary losses due to McIntyre's actions. In July 2013, the circuit court enjoined McIntyre and McVesting from disposing of any assets in which any of the parties had a beneficial interest. In September 2014, McIntyre and McVesting filed a counterclaim against Terra and a third-party complaint against Smith and Bell individually alleging Terra, Smith, and Bell had breached the partnership agreement with McIntyre and McVesting, had conspired to defraud McIntyre and McVesting, had converted McIntyre and McVesting's property, and had committed fraud.
In the summer of 2016, the circuit court ordered McVesting to execute authorizations to obtain its business records regarding receipt and payment of funds and payment of expenses and ordered McIntyre to provide Terra with any information needed to access McVesting's accounts. The circuit court appointed Tom Dailey as special master and entered a separate order (1) directing McIntyre and McVesting to provide Dailey with McVesting's tax returns and related information since its inception, as well as any written document relating to the organization and governance of McVesting; (2) instructing Terra to make its best effort to obtain all bank records relating to McVesting; and (3) ordering the parties to cooperate with Dailey in obtaining any other necessary information or in having any telephone conferences. The circuit court's order also dissolved McVesting as of August 12, 2016, subject to rescission or modification for good cause shown by either party or Dailey if the circuit court determined a different termination date was proved or agreed to by the parties.
In March 2017, Dailey provided his determinations to the circuit court. In his report, Dailey found McVesting never had an operating agreement; he was unable to value the property (mineral) interests; there was approximately $ 337,225.55 in cash and receivables to be divided; the income and tax-liability allocations between Terra and McIntyre had varied over the years and could not be reconciled in the absence of an operating agreement; and in Dailey's opinion, the only way Terra could establish entitlement to more than 50% of McVesting was to establish McVesting originally had three members and Terra succeeded two of those members.
In October 2017, Terra filed a second amended complaint adding Martha Niece, McVesting's accountant, as a defendant.[2] The second amended complaint alleged that Smith, Bell, and McIntyre formed McVesting in September 2008; that *428 in 2010, Smith and Bell assigned their respective interests in McVesting to Terra; that McVesting's "Articles of Organization" were amended to reflect Terra's interest in McVesting; and that the parties intended Terra's ownership interest in McVesting to reflect and remain the same as that assigned to Terra by Smith and Bell, with Terra owning 70% and McIntyre owning 30%. The second amended complaint also alleged that McIntyre and Niece willfully and fraudulently breached their duties to Terra by making material misrepresentations and omissions; had converted McVesting's funds; had made false representations and concealed material facts with the intent to deceive and mislead Terra; were unjustly enriched at Terra's expense; and knowingly and willfully conspired to deceive Terra and wrongfully take control of McVesting's assets at Terra's expense.
On October 6, 2017, McIntyre and McVesting filed an offer of judgment. The offer of judgment provided Terra and McIntyre would each have a 50% interest in McVesting; the assets and liabilities would be dissolved, with each member receiving a 50% undivided interest in the mineral rights and oil wells and 50% of the cash held in the court registry and in McVesting's bank accounts; each party would have a preferential-purchase right if the other chose to sell its undivided mineral-interest share; Terra would assign its 70% interest back to McVesting; Terra would reimburse McVesting for payments made to Terra by SWN; and McVesting's tax returns would be amended to allocate profits equally between Terra and McVesting. The offer of judgment stated it was unconditional, made to fully and finally resolve all claims asserted by Terra against McVesting, and open and irrevocable for ten days after service on Terra, after which it would be deemed withdrawn. There was no acceptance of this offer of judgment by Terra.
On October 26, 2017, a hearing was held before the circuit court. Terra requested copies of McVesting's income-tax returns from the IRS to compare with those returns McVesting had already produced and bank statements from another company owned by McIntyre to verify McIntyre's funds had not been commingled. McVesting stated all relevant information had been turned over to Terra's prior attorney, and McIntyre had provided Dailey with all authorizations needed. Terra's attorney, Scott Scholl, claimed authorizations had not been given for the tax information. McVesting's attorney, Victoria Leigh, asserted McIntyre had signed releases for the tax returns; she objected to the release of the tax returns for McIntyre's other company or McIntyre's personal tax returns. The circuit court ruled Terra was entitled to access these records but limited the scope of such information by a protective order.
On October 18, 2017, McVesting filed a motion for partial summary judgment, requesting dismissal of all five counts alleged in the second amended complaint, arguing (1) there was no proof from which to conclude McIntyre was grossly negligent or engaged in willful misconduct; (2) Smith and Bell were not members of McVesting and had no standing to pursue claims against McIntyre; and (3) McVesting's assets were to be split equally between McIntyre and Terra. Terra resisted this motion, on the record, responding:
They [Terra] further state in the affirmative that the parties have agreed to certain terms for a full and final settlement of the issues arising herein, and therefore this reply is being filed to ensure that a timely response to the motion for partial summary judgment is filed of record. However, they reserve *429 the right to file an amended reply, a brief in support of their reply, or to present additional arguments and citation to authority at the hearing if, for whatever reason, a party withdraws from the settlement agreement and a motion to enforce settlement is not pursued or granted.
McVesting filed its reply to Terra's response, arguing Terra's response did not purport to meet proof with proof or provide any substantive argument but rather the response was filed as a "placekeeper" in the event a party reneged on the settlement agreement, which Terra verbally indicated an intent to do on November 7, 2017.
Of significance to the factual determination of whether the parties reached a full and complete settlement agreement are the rapid-fire emails, faxes, and telephone calls from October 27 to November 7, 2017, between the parties' separate counsel, contrasted against related electronic communications between appellants' counsel, Scott Scholl, and one of his clients, Samantha Smith, within the same time period.
A. Communications Between Counsel
On November 8, 2017, McVesting, through counsel, Victoria Leigh, filed a motion to enforce settlement. McVesting alleged that on November 2, 2017, the parties came to an agreement resolving all issues and claims after the parties' attorneys negotiated via telephone and emails on October 27, 30, and 31, and November 1 and 2; that at approximately 8:00 p.m. on November 2, the parties' attorneys confirmed via text message a final agreement with the understanding that both the formal settlement agreement and a release would be finalized in the coming days. Terra, in its response to McVesting's motion for summary judgment, also acknowledged the parties' settlement by stating, "They [Terra] further state in the affirmative that the parties have agreed to certain terms for a full and final settlement of the issues arising herein, and therefore their [Terra's] reply is being filed to ensure that a timely response ... is filed of record. However, they [Terra] reserve the right to file an amended reply, ..., or to present additional arguments ... at a hearing if, for whatever reason, a party withdraws from the settlement agreement and a motion to enforce settlement is not pursued or granted." McVesting alleged that on November 7, 2017, Terra's counsel, Scott Scholl, informed McVesting's counsel, Victoria Leigh, that Terra would not honor the settlement agreement absent additional discovery. McVesting attached as exhibits text messages and emails between the attorneys. The text messages between the attorneys indicated that Scholl stated,
Okay, settle for $ 215,000, both sides release any claims or potential claims against the other, you draft the settlement agreement and deeds. Tomorrow I will file a barebones reply to the motion for summary judgment as a cya but reserve the right to file a supplemental brief or further pleadings if for some reason someone pulls out of the agreement and a motion to enforce settlement agreement is not successful.
Leigh replied, "That's fine. Agreement on everything else?" and Scholl texted, "We can do that. We can advise the court of settlement after we have everyone's signature on paper." McVesting also attached emails dated November 7 between Scholl and Leigh in which Scholl stated, "In order to finalize settlement in this matter, please forward the latest bank statements for McVesting as well as the latest revenue/expenditure reports." Leigh replied, "Why? We have a deal at $ 215K based on all disco[very] that has been exchanged. We represented to the court that all *430 disco[very] was complete. This is inappropriate based on the agreement we have. Are your clients reneging?" Leigh then sent Scholl another email later in the afternoon on November 7 asking for insight on Terra's latest request, as Scholl had indicated in phone calls with her they were not disagreeing on the terms of settlement as reflected in the last settlement agreement she sent to him; in her email she said the only purpose of requesting additional documentation was to reopen settlement negotiations; and she asserted McIntyre would not agree to payment of more than $ 215,000, as they had already agreed.
A letter from Dailey to the circuit court dated November 13, 2017, stated Leigh had emailed him on November 3 informing him the matter had been settled and the parties wanted Dailey's assistance in drafting documents to effectuate the settlement and to secure the release of suspended revenue from SWN Energy Company. Dailey asserted that later in the day on November 3, Scholl confirmed the agreement in an email to him but that, beginning on November 7, Smith, through Scholl, requested Dailey obtain additional information from SWN; that there were also further requests Dailey obtain additional information on multiple other wells. Dailey revealed that on November 9, he received a copy of an email Smith sent to the chief counsel and deputy director of the Arkansas Oil and Gas Commission detailing numerous complaints against McVesting and Dailey in this matter. Dailey advised the circuit court he did not intend to take further action in the matter unless directed to do so by the court or unless both parties agreed and requested further action.
A short hearing was held on November 13, 2017. The circuit court declined to rule on the pending summary-judgment motion and allowed Scholl twenty days from the time Leigh filed the motion to enforce settlement agreement to respond before the circuit court stepped in and enforced what had been represented as an agreed settlement with all parts fleshed out and with both attorneys having the authority to bind their clients. The record does not indicate that either Smith or Bell were present for this hearing.
Terra resisted the motion to enforce settlement, arguing there was no meeting of the minds as to all terms of the settlement agreement; therefore, a contract did not exist for the circuit court to enforce. In reply to Terra's response to the motion to enforce settlement, McVesting alleged there was no dispute about any of the terms, essential or otherwise, of the settlement; there were no elements missing in the terms of the settlement agreement, and although Terra alleged there were essential elements of the settlement missing, Terra did not indicate which elements were missing; Terra's counsel possessed actual and apparent authority to engage in settlement negotiations on behalf of Terra and to bind Terra, Smith, and Bell to a final written agreement; the text message clearly and explicitly indicated a full and final settlement; and McVesting stood ready to execute the settlement agreement, but Terra changed its mind and requested to engage in further discovery after all parties represented to the circuit court that all discovery was completed.
On December 14, 2017, the circuit court entered an order granting McVesting's motion to enforce settlement, finding the settlement agreement entered into between the parties was a valid and enforceable settlement agreement, which fully and finally resolved all issues in the matter.
B. Communications Between Scholl and Smith
With new counsel, Terra filed a motion for new trial on December 21, 2017, asserting *431 the parties were still negotiating and had not given their attorney authority to settle the case. Affidavits from Smith and Bell were filed with the motion for new trial, stating they had agreed to negotiate but not to settle the case, and both of them refused to sign a general outline agreeing on final settlement. The affidavits detailed the reasons Smith and Bell refused to sign a general outline agreeing on a final settlement, including the fact that Scholl was told by them that a full disclosure of funds and assets had to be given before a final settlement would be agreed upon and signed. Also attached to the motion for new trial was an October 31, 2017 email from Smith to Scholl stating that Dailey needed to provide "an updated revenue report on all revenue that had been deposited into the suspense report and the expenditures charged to the working wells," as it was impossible to arrive at figures without true numbers. In the email, Smith told Scholl that while Leigh and McIntyre knew the true numbers, she and Bell did not have that information. Also attached to Terra's motion was a copy of the draft settlement agreement, which was unsigned. Likewise, an email sent from Leigh to Scholl on November 3, 2017, at 12:47 p.m. was attached, stating: (1) Leigh would not have the final agreement completed that day but was enclosing a draft; (2) she told Scholl to get in writing from Smith that Smith agreed to the $ 215K; and (3) she had it in writing from McIntyre. Later that day at 1:27 p.m., Scholl sent the draft of the settlement document to Smith. Then, attached were the flurry of emails between Scholl and Smith. At 3:16 p.m., Scholl emailed Smith a copy of the general outline of the settlement agreement and instructed Smith to sign the outline and have Bell also sign the outline. At 4:20 p.m., Smith emailed Scholl informing him Bell was not going to sign the general outline; there was no full disclosure of the money and assets of McVesting; some expenses needed to be assumed by McVesting; and both Smith and Bell questioned what else was being "hidden" from them. At 4:49 p.m., Scholl emailed Smith, telling her the document was a work in progress and the actual settlement agreement probably would not be drafted until the next week; the general outline was a "CYA" to ensure everyone was committed to a settlement "so that nobody is caught with their pants down when someone denies there is a settlement and people are facing motions of going into a 3-day trial not prepared." Scholl also informed Smith he had spoken with Bell and would have a provision added in which McIntyre would be responsible for well expenses. On November 8 at 11:36 a.m., Scholl sent Smith a draft of the settlement agreement in an email, marked as a draft for client review. At 7:05 p.m. that night, Smith emailed Scholl, stating the figures were not current, updated figures were needed, and individual well revenue and expenditures had not been received. Neither Smith nor Bell ever signed a general outline or a settlement agreement.
On January 4, 2018, the circuit court entered an order denying the motion for new trial. Terra filed a timely notice of appeal.
II. Standard of Review
On appeal, a circuit court's findings of fact will not be reversed unless they are clearly erroneous. DaimlerChrysler Corp. v. Smelser , 375 Ark. 216, 289 S.W.3d 466 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Id. Disputed facts and determinations of the credibility of witnesses *432 are within the province of the factfinder. Id.
III. Argument and Analysis
The law favors amicable settlement of controversies, and courts have a duty to encourage rather than discourage compromise as a method of resolving conflicting claims. Williams v. Davis , 9 Ark. App. 323, 659 S.W.2d 514 (1983). Nevertheless, a settlement is contractual in nature, and in order to be legally valid, it must possess the essential elements of a contract. Id. The essential elements of a contract are (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligation. DaimlerChrysler, supra. A court cannot make the parties' contract, but instead can only construe and enforce that contract the parties have made. Id. There must be a meeting of the minds in order to have a valid contract, using objective indicators; if there is no meeting of the minds, there is no contract. Id. Whether there is a meeting of the minds is a question of fact, and the circuit court's findings of fact will not be reversed on appeal unless they are clearly erroneous. Id.
Terra (which is inclusive of Smith and Bell) argues no full and complete settlement was ever approved or agreed to by them, as they could agree on neither the material terms nor the scope of their contemplated agreement. Terra points out it was still seeking further updated financial information on McVesting, and while Scholl and Leigh might have had "an agreement to agree," Terra had agreed to nothing, including a general outline for the settlement agreement. Terra further asserts that while McVesting represented to the circuit court on October 18, 2017, discovery in the case had already been completed, such could not possibly be true because in a hearing held on October 26, 2017, the circuit court had ordered McIntyre to sign releases for financial information. Terra contends it is "incredulous" to believe Terra had given authority to Scholl, actual or apparent, to settle the case without the tax information that had been ordered to be turned over a few days earlier.
In support of its argument, Terra cites Billingsley v. Benton NWA Props., LLC , 2015 Ark. 291, 2015 WL 3929592. There, the parties reported to the circuit court prior to trial they had reached a settlement. The settlement terms included an agreed amount of damages to be paid by appellee; an agreement appellee would not contest appellants' applications to place fill on their property in the future; appellants would dismiss their claims against appellee with prejudice after the settlement agreement was signed; appellants would withdraw or not submit a proposed revision of the floodway or floodplain to the Federal Emergency Management Administration; and the settlement agreement would have mutual general releases. However, when appellee's counsel emailed a proposed settlement agreement to appellants' counsel, it contained a provision that appellants would release all claims of any kind against appellee, whether known or unknown, that they have had, presently have, or may have in the future. Appellants' counsel objected to the release of claims based on future acts; appellee's counsel refused to remove the language; and appellants refused to agree to release any future claims. Appellee filed a motion to enforce settlement agreement, noting the parties had agreed to a settlement with the exception of the scope of release. The circuit court entered an order to enforce the settlement agreement, finding it effected a release by appellants of all claims against appellee and its successors. Our supreme court reversed, holding it *433 was clear from the record there was no agreement between the parties as to the scope of release.
Here, it is patently clear Smith and Bell made no agreement to settle. Smith was emailing Scholl on October 31 requesting more financial information, and she was adamant that neither she nor Bell would sign a general outline or draft agreement without more financial information. There was never a meeting of the minds on the part of Terra as to the buyout amount. With knowledge of Smith and Bell's wishes, on November 3, Scholl entered into a settlement agreement with Leigh to settle for $ 215,000, at which time both Scholl and Leigh represented to the circuit court and to Dailey that the matter had been settled.
The question then becomes whether Scholl had the authority to bind Terra. The answer to that question is no. "The authority of an agent must be shown by positive proof or by circumstances that would justify the inference that the principal has assented to the acts of his agent." Mack v. Scott , 230 Ark. 510, 513-14, 323 S.W.2d 929, 931-32 (1959). "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing, such authority as he appears to have by reason of the actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." Id. at 514, 323 S.W.2d at 931-32. Whether an agent is acting within the scope of his actual or apparent authority is a question of fact. Walker v. Stephens , 3 Ark. App. 205, 626 S.W.2d 200 (1981). However, neither agency nor the extent of an agent's authority can be shown by the agent's own declaration in the absence of the party to be affected. Dixie Ins. Co. v. Joe Works Chevrolet, Inc. , 298 Ark. 106, 766 S.W.2d 4 (1989). "An attorney is not permitted to compromise his client's cause of action or judgment without permission." Turner Furnishing Goods Co. v. Snyder , 201 Ark. 699, 146 S.W.2d 913, 914 (1941). In Veasey v. Joshlin , 257 Ark. 422, 423, 516 S.W.2d 596, 596-97 (1974) (citations omitted), our supreme court cited McKenzie v. Boorhem , 117 F.Supp. 433 (1954), "Under Arkansas law, an attorney has no implied authority to enter into a compromise agreement. However, when a client gives his attorney specific authority to enter into a compromise agreement, such an agreement, if entered into by the attorney, is valid and binding." Clearly, Scholl had no actual authority to bind Terra without agreement from Smith and Bell. At least three days prior to Scholl's entering into the agreement with Leigh, Smith was asking for more financial information from McVesting, and she told Scholl it was not possible to make a decision without true numbers. Smith consistently refused to sign any acknowledgement of an agreement of any sort. Scholl knew at least three days prior to entering into the settlement agreement with Leigh that he had no authority to determine a buyout amount at that time. Without specific authority, Scholl could not bind Terra, and the circuit court was clearly erroneous in enforcing the settlement agreement.
Reversed and remanded.
Gladwin and Vaught, JJ., agree.

Bell was a shareholder of Terra when this action was commenced in 2012, but he is no longer a shareholder.

A motion to dismiss the claims against Niece was filed on October 16, 2017, and an order dismissing Niece without prejudice was entered on October 18, 2017. The dismissal of a party to an action, with or without prejudice, is sufficient to obtain finality and invest jurisdiction in an appellate court. Driggers v. Locke , 323 Ark. 63, 913 S.W.2d 269 (1996). Therefore, the dismissal of Niece from the case does not create a finality issue.