Cite as 2024 Ark. App. 315

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-22-799

| | |
|---|---|
| MERCY HOSPITAL FORT SMITH, MERCY CLINIC FORT SMITH COMMUNITIES, AND WILLIAM A. KNUBLEY, MD<br><br><div align="right">APPELLANTS</div><br><br>V.<br><br><br>PAULA A. LESLEY AND DARREN L. LESLEY<br><br><div align="right">APPELLEES</div> | Opinion Delivered  May 15, 2024<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FCV-19-594]<br><br>HONORABLE DIANNA HEWITT LADD, JUDGE<br><br>REVERSED AND REMANDED |

**RITA W. GRUBER, Judge**

Mercy Hospital Fort Smith (Mercy Hospital), Mercy Clinic Fort Smith Communities, and William A. Knubley, MD, appeal the September 23, 2022 order of the Sebastian County Circuit Court granting the motion to enforce settlement filed by appellees Paula A. Lesley and Darren L. Lesley. Appellants contend that the circuit court erred in finding that the parties had a settlement agreement because (1) the parties did not agree to all the settlement terms; (2) neither appellants' trial counsel nor the mediator had authority to settle the case for $4.75 million on September 16 or 17; and (3) appellees' $7.75 million counteroffer terminated Mercy Hospital's $4.75 million offer. We reverse and remand.

## I. *Background*

On July 3, 2019, appellees filed a medical-malpractice suit against the three separate appellants. Appellees alleged that Ms. Lesley suffered a stroke while she was working as a registered nurse at Mercy Hospital; that she was treated by appellants; that appellants were negligent in their care of her; and that their negligence damaged her and the marital relationship between her and her spouse. Appellants denied having engaged in any negligent conduct or having caused any damage to either appellee.

This case was set to begin a ten-day jury trial on September 19, 2022. The events that transpired between September 14–17, 2022, gave rise to this appeal. The people involved in those events are as follows:

- Paula A. Lesley, separate appellee;
- Darren L. Lesley, separate appellee;
- David A. Paul, lead counsel for the Lesleys;
- Mercy Hospital, separate appellant;
- Ann Rucker, chief litigation officer for Mercy Hospital;
- Unnamed CEO of Mercy Hospital;
- Edwin Lowther, Jr., lead trial counsel for the three separate appellants;
- Jeffrey Fink, an attorney who was admitted pro hac vice to represent only Mercy Hospital for purposes of the motion to enforce;
- Kirkman T. Dougherty, an attorney who entered a limited appearance on behalf of only Mercy Hospital to sponsor Fink's admission pro hac vice;  and
- Jim Tilley, certified mediator.

The testimony referred to in the following timeline was provided at the September 20, 2022 hearing. Lowther, Tilley, and Paul testified in appellees' case-in-chief. Appellants did not put on any testimony. Any referenced emails were admitted at that same hearing.[1]

**Wednesday, September 14, 2022**

On Wednesday, September 14, 2022, a joint stipulation was filed in which appellants conceded that they were negligent in the treatment provided to Ms. Lesley but maintained that their negligence was not the proximate cause of appellees' damages and that Ms. Lesley failed to mitigate her damages. The stipulation set out that the trial would be held in two parts: (1) a jury trial and verdict regarding what damages were caused by appellants' negligence; and (2) a consideration of whether punitive damages were appropriate and, if so, in what amount.

That same day, Tilley communicated to Paul that there was a settlement offer from Mercy Hospital of $4.75 million. In a 1:31 p.m. email, Tilley wrote to Lowther and Rucker,

> I have talked to Dave Paul. He is ready to cut to fast moves and to the chase to see if the case can be resolved by the end of the workday today. He responded to $4.75 with $7.75 million, which is both of you honoring your midpoints. My belief is $6.5 million settles it based on my latest conversation.

Lowther testified that after the $7.75 million response, it was understood that the $4.75 million was "the floor" of what Mercy Hospital was willing to pay to get the case settled, and they "continued plugging on." Lowther further testified that the communications

---

[1]We note that objections were raised regarding both Tilley and Lowther testifying.

3

between him, Rucker, and Tilley were focused on whether they could get more monetary authority.

Tilley testified that at 3:27 p.m., Rucker communicated to him that she did "not have 6.5 mill, so cannot make that offer. I think you could see if 6 mill would do it, and I would do my best to get that." Tilley further testified that he had received another email from her communicating that he be careful about offering $6 million because she did not yet have that authority, but she had prepared her leaders for that "potentiality." Tilley explained that when negotiations were occurring on Wednesday and the $4.75 million was "put out there," there was an oral representation that Mercy could probably get to $5 million, with a possibility of $6 million.

**Thursday, September 15, 2022**

Paul testified that "they" continued to have settlement discussions throughout Thursday, September 15. In a 3:27 p.m. email, Tilley wrote to Rucker and Lowther,

> Dave Paul is in Fort Smith preparing for the pretrial tomorrow, and he plans on meeting with the plaintiffs tonight. He, like most trial lawyers, wants to have a singular focus this close to the start of a trial and it is either get the case settled now or go get ready for trial next week. His frustration level is through the roof because of no response. Anything that can be done to get us into a position to respond to the plaintiffs' last settlement demand would be most appreciated.

**Friday, September 16, 2022**

On Friday, September 16, the circuit court ordered the parties to submit all remaining issues to mediation no later than 4:30 p.m. that same day. The circuit court further ordered

that "[e]ach party shall appear at said mediation by phone, or zoom, with a person authorized to settle this matter."

In a 12:00 p.m. email, Tilley wrote to Rucker and Lowther, "Any possibilities the leaders will tell us the final settlement authority by 2:00 or tell us how to respond to the $6.5 million number which has been on the table since Wednesday?" Tilley testified that during a telephone conversation on Friday, between 1:30 and 2:03 p.m., Tilley and Rucker talked about what the reinsurers had believed, what focus groups had done, and what her settlement authority had been at $4.75 million. In a 3:50 p.m. email, Rucker wrote to Lowther and Tilley:

> All, I must let you know that our CEO has opted not to respond with any further offers. He is the ultimate decision-maker on whether to settle or not and at what level. I now have that in writing. Please let plaintiffs' counsel know and the judge so we are not in violation of her order. If you desire further conversation on this, I am available but I am told that decision is final, so we are headed to trial on Monday. I appreciate all your efforts to move this to resolution including the last minute gyrations which I recognize were monumental.

Tilley testified that he communicated to Paul that an email had been received at 3:50 p.m.—the one they had been waiting on since Wednesday afternoon—and Rucker had informed him there was no further settlement authority. Tilley explained that based on the totality of the circumstances and his prior oral communications with Rucker, he believed he had the authority to relay to Paul that Mercy's "last best final offer" was $4.75 million, and he did just that, sometime between 4:00 p.m. and 5:00 p.m. on Friday. Paul's testimony confirmed that Tilley had called Paul around 5:00 p.m. and communicated to Paul that the last best final offer from Mercy was $4.75 million.

Paul testified that he had a conversation with Lowther that evening in which he communicated a number to Lowther, and Lowther responded, "Well we'll see." Paul explained that he told Lowther that he (Paul) was going to take Mercy's "best final offer" to appellees, and "at the end of the day, it's the clients' choice to accept it or not accept it." Lowther's testimony confirmed that he and Paul spoke that day around 5:00 p.m., during which Paul told Lowther that he was going to take the $4.75 million offer to his clients. Lowther testified that he did not tell Paul that the $4.75 million number was "off the table."

## Saturday, September 17, 2022

Paul testified that he had a conversation with appellees, after which he called Lowther and said, "[M]y clients are accepting your last best final offer, period," to which Lowther responded, "We have a deal, period." Lowther's testimony confirmed that he spoke to Paul on Saturday morning and Paul "mentioned" that his clients had accepted the $4.75 million offer, and in response to that, Lowther said, "Great. We've got a deal." Paul testified that Lowther called him later that day and said, "Mercy is taking the position now that there is not a deal." Appellees then filed an "emergency motion to enforce settlement agreement / motion for emergency evidentiary hearing."

## Monday, September 19, 2022

Instead of starting the trial on Monday, the circuit court heard the motion to enforce. The hearing began with a request that it be continued so that Mercy could hire outside counsel because of the "very awkward position" in which Lowther was being placed. The request was made by Dougherty, who was appearing in a "very limited capacity" on behalf of

Mercy Hospital only. The court ordered that the hearing would be continued for twenty-four hours to allow outside counsel to be retained for purposes of arguing the motion; the hearing would begin the following day at 8:00 a.m.; and absent a resolution, trial would then begin.

**Tuesday, September 20, 2022**

The hearing on the motion to enforce resumed, and Fink was admitted pro hac vice on behalf of Mercy Hospital. Paul, Lowther, and Tilley specifically testified as set forth above. In sum, Lowther and Tilley each testified that the $4.75 million offer was never explicitly withdrawn; that each believed the $4.75 million remained "on the table" for settlement purposes; and that the 3:50 p.m. email meant only that no *further* offers were going to be made, not that the $4.75 million was no longer available to settle the case. Paul, Lowther, and Tilly each testified to his respective belief that a $4.75 million settlement agreement had been reached between the parties. Each also testified to his belief that Lowther had the authority—flowing from or through Rucker—to make and/or accept an offer on behalf of Mercy Hospital.

On September 23, 2022, the circuit court entered an order granting appellees' motion to enforce the settlement. The circuit court specifically found that the three witnesses were credible and that a settlement agreement had been reached, thus resolving all claims made by appellees against "all defendants" in exchange for $4.75 million. On September 30, 2022, appellants filed their timely notice of appeal, abandoning any pending but unresolved claims.

II. *Standard of Review*

7

The law favors amicable settlement of controversies, and courts have a duty to encourage rather than discourage compromise as a method of resolving conflicting claims. *Terra Land Servs., Inc. v. McIntyre*, 2019 Ark. App. 118, at 12, 572 S.W.3d 424, 432. Nevertheless, a settlement is contractual in nature, and to be legally valid it must possess the essential elements of a contract, which are (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligation. *Id.* A court cannot make the parties' contract but, instead, can only construe and enforce the contract the parties have made. *Id.* There must be a meeting of the minds to have a valid contract, using objective indicators; if there is no meeting of the minds, there is no contract. *Id.*

Whether there is a meeting of the minds is a question of fact. *Id.* On appeal, the circuit court's findings of fact will not be reversed unless they are clearly erroneous. *Id.* at 12–13, 572 S.W.3d at 432. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* at 12, 572 S.W.3d at 431. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.*, 572 S.W.3d at 431–32.

## III. *Discussion*

We address appellants' three points on appeal in reverse order. Appellants' last contention is that appellees' $7.75 million counteroffer terminated Mercy Hospital's $4.75 million offer. Appellees respond with "that legal reality is beside the point." They further

8

respond that "[t]he validity of this settlement does not depend on the legal effect of the Lesleys' Wednesday $7.75 million response."

"A counter-proposition to an offer terminates the original offer. A subsequent acceptance of the original offer does not have the effect of reviving the original proposal." *Roleson v. Blount*, 143 Ark. 307, 310, 220 S.W. 31, 32 (1920); *see also Younts v. N. Little Rock*, 294 Ark. 501, 503, 744 S.W.2d 715, 716 (1988). A terminated offer cannot later be accepted. *Childs v. Adams*, 322 Ark. 424, 432, 909 S.W.2d 641, 645 (1995). A late acceptance, in reality, constitutes a counteroffer that must, in turn, be accepted to form a contract. *Id.* Based upon this authority, appellees' counteroffer was a rejection and termination of Mercy's $4.75 million offer. Therefore, there was no $4.75 million offer from Mercy for the appellees to accept on Saturday.

Our analysis does not end there. Both Paul and Lowther testified that Paul, having received the authority to do so from appellees, called Lowther and accepted Mercy's $4.75 million offer on Saturday, September 17. However, Paul's "acceptance" on behalf of appellees, in reality, constituted a counteroffer that must, in turn, have been accepted to form a contract. *See Childs*, *supra*. Paul testified that in response to Paul's "acceptance," Lowther responded, "We have a deal, period." Lowther testified that he responded, "Great. We've got a deal."

This brings us to appellants' second point on appeal, which is that neither Tilley nor Lowther had authority to settle the case for $4.75 million on September 16 or 17. Appellants rely on *Terra Land Services*, 2019 Ark. App. 118, 572 S.W.3d 424. Appellees respond that all

three people who testified believed an agreement had been reached and that the $4.75 million offer was never explicitly withdrawn. Appellees emphasize that the mediator and appellants' own trial counsel believed that Mercy Hospital had authorized settlement at $4.75 million and that their understanding was based on years of legal experience generally and course of dealing with these parties specifically. Appellees rely on *Dewitt v. Johnson*, 349 Ark. 294, 77 S.W.3d 530 (2002).

In support of their arguments, both parties emphasize Rucker's September 16, 2022, 3:50 p.m. email to Lowther and Tilley:

> All, I must let you know that our CEO has opted not to respond with any further offers. He is the ultimate decision-maker on whether to settle or not and at what level. I now have that in writing. Please let plaintiffs' counsel know this—know, and the judge, so we are not in violation of her order. If you desire further conversation on this, I am available. But I am told that decision is final, so we are headed to trial on Monday.

Appellants emphasize that Rucker did not state that the $4.75 million was still on the table but, rather, stated that they were headed to trial on Monday, which was a clear indication that there was no settlement. Appellants further take issue with Tilley's reoffering—in appellants' view—the $4.75 million rather than responding to Rucker's email to request clarification per her stated offer of "further conversation." Appellees argue that the email stands for the proposition that just because there were not going to be any additional offers, this did not mean that the previous $4.75 million offer had been withdrawn.

An attorney is not permitted to compromise his client's cause of action or judgment without permission. *Terra Land Servs.*, 2019 Ark. App. 118, at 15, 572 S.W.3d at 433. The

authority of an agent must be shown by positive proof or by circumstances that would justify the inference that the principal has assented to the acts of his agent." *Id.* "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing, such authority as he appears to have by reason of the actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Id.* (quoting *Mack v. Scott*, 230 Ark. 510, 514, 323 S.W.2d 929, 931–32 (1959)). But neither agency nor the extent of an agent's authority can be shown by the agent's own declaration in the absence of the party to be affected. *Id.*

Stated another way, an attorney cannot, by virtue of his or her general authority as attorney, bind the client by any act that amounts to a surrender or waiver, in whole or in part, of any substantial right of the client. *Dewitt v. Johnson*, 349 Ark. 294, 298, 77 S.W.3d 530, 532 (2002). Our courts have recognized that an attorney's authority to compromise or settle the client's claim may be apparent or inferred from the client's actions and communications, regardless of whether the client has expressly instructed the attorney to settle the case. *Id.* A client may clothe his attorney with as much or as little authority as he deems appropriate for the satisfactory conduct of his affairs. *Id.* Thus, whether an attorney has authority to settle or compromise the client's case is a question for the trier of fact to determine. *Id.* We will not reverse the circuit court's findings unless they are clearly erroneous. *Id.* We will defer to the circuit court's superior position to judge and determine the credibility of the witnesses. *Id.*

11

In *Terra Land Services*, the circuit court determined that the parties had reached a settlement agreement. 2019 Ark. App. 118, at 10, 572 S.W.3d at 430. We reversed and remanded on appeal, holding that the circuit court erred in granting the appellee's motion to enforce settlement. *Id.* at 16, 572 S.W.3d at 433. In doing so, we noted the significance of the "rapid-fire emails, faxes, and telephone calls from October 27 to November 7, 2017, between the parties' separate counsel, contrasted against related electronic communications between" other attorneys and a separate client within that same period. *Id.* at 6, 572 S.W.3d at 429. We concluded that the organization's attorney did not have the authority to bind his client, emphasizing the lack of specific authority contained within the record. *Id.* at 16, 572 S.W.3d at 433.

In *Dewitt*, the appellant's attorney testified that he expressed his concerns to the appellant that she might not get anything if she went to trial and urged her to accept the offer; she responded, "Well, it looks like I really have no choice"; the attorney replied, "You really don't"; and the attorney then told the appellant he was going to settle her case. 349 Ark. 294, 299, 77 S.W.3d 530, 533 (2002). The appellant testified that she did not remember if she told the attorney that she felt she had no choice but to accept the settlement. *Id.* The circuit court credited the attorney's testimony that the appellant had stated she had no choice but to settle and that the statement was sufficient to convey authority to settle to the attorney. *Id.* Our supreme court affirmed. *Id.*

Here, the circuit court specifically found all three witnesses' testimony credible. Although credibility is not for us to determine on review, the subjective belief of the

witnesses does not dictate the outcome of this case. Rucker's email to Tilley and Lowther was admitted into evidence.[2] It contained the authoritative directive from Mercy Hospital's CEO. That directive reflects that negotiations had concluded, and the case was going to trial. The witnesses' testimony, while sincere, cannot overcome that directive under the caselaw cited herein. Accordingly, we hold that the circuit court erred in granting the motion to enforce, and we reverse and remand for further proceedings. Appellants' first point on appeal is that there was no meeting of the minds as to all terms. Because we reverse on the basis of points two and three, we decline to address point one.

Reversed and remanded.

GLADWIN and KLAPPENBACH, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellants.

*Stephen M. Sharum*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellees.

---

[2]Appellees made a global objection to all four of Mercy Hospital's email exhibits being admitted into evidence on the basis that the emails were redacted and incomplete. The objection was overruled.